FRANK MARRUFO, JR. V. STATE

No. 34,484.   May 30, 1962

*Alejandro Duran, Jr.,* and *Mauro Rosas,* El Paso, for appellant.

*Edwin F. Berliner,* District Attorney, *Jack N. Ferguson,* First Assistant District Attorney, *Sam W. Callan,* Assistant District Attorney, El Paso, and *Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

Appellant, Frank Marrufo, Jr., and Roberto Duron were jointly indicted for the murder of Bernardo Nava Reyes. Upon the granting of a severance, appellant was separately tried and convicted and his punishment was assessed at confinement in the penitentiary for five years.

The state's testimony shows that on the night of July 15, 1960, the deceased was shot and killed, around 9 o'clock, p.m., after he had been called outside his house and had engaged in an argument with some parties in the street.

Prior to the shooting, the deceased was also involved in a fight

with some friends of appellant's co-indictee Roberto Duron. Upon learning of the fight, Duron went to David Escarciga and asked Escarciga if he had a gun and some bullets, giving as his reason for wanting the gun that the deceased had beaten up his friend and that he and some other boys were going to see what they could do about it. Escarciga had no gun and Duron left, saying he was going to appellant's house. Duron and appellant were then seen driving away in appellant's automobile in the direction of Duron's home. About an hour later, Escarciga heard what he thought to be two shots and, after waiting a few minutes, walked by the corner of a playground where he saw Duron, who had a rifle, in company with two other men. The rifle was recognized by Escarciga as an English rifle belonging to Duron's brother.

Police Detective Joe Gonzalez, upon going to the scene, found the deceased lying in the street, bleeding from a wound in the chest. An autopsy was performed upon the deceased's body by Dr. Frederick P. Bornstein, who testified that the cause of death was a bullet which had passed through the body and shattered the heart and liver.

The rifle which was identified by the witness, Escarciga, as the one which he saw in possession of Duron after the shooting was recovered from Duron's home by Lt. Roy Moeller on the night of the killing.

Appellant was arrested on the following day shortly after 2 o'clock, p.m., by Detective Domingo L. Tellez and was taken to police headquarters, where he was booked in at 3:50 o'clock p.m. After being questioned, appellant made and signed a written statement to Officer Tellez at 5:15 o'clock, p.m. in which he stated that on the night of the killing, Duron came to his home and told him that the deceased had taken a shirt from his friend in a fight and asked appellant to take him to his home to get a rifle; that he took Duron to his home, where he obtained a rifle, and they then drove to the deceased's home, where they were joined by some of Duron's friends. Appellant stated that it was agreed that they would shoot the deceased if he did not return the shirt and after the deceased came out of his house and was talking to some of those present, Duron fired the rifle, after which he and the appellant fled.

After signing the confession, appellant was questioned by Lt. Joe Gonzalez, beginning at 6:20 o'clock, p.m., and made and signed a second confession which was completed at 7:45 o'clock, p.m., in which he stated that it was he who fired the rifle on the

night in question. In describing the actual shooting of the deceased, appellant stated that Duron attempted to fire the rifle and it clicked and "I took it away from him and pulled down the hook, and as I had my finger on the trigger it went off as soon as I pulled the hook." In his confession appellant identified the English 303 rifle found in Duron's home by the officer as the rifle "Roberto had and the one I fired at "Berra' [the deceased] last night."

The two confessions were admitted in evidence by the court, after evidence was heard on the question of their voluntary nature, over appellant's objection that they were not freely and voluntarily made and were shown to be inadmissible as a matter of law.

Testifying as a witness in his own behalf, appellant related how he took Duron to his home to get the rifle on the night in question and then going to the scene of the killing with Duron to get the shirt from the deceased. Appellant stated that the rifle was taken to scare the deceased and after they arrived at the scene and some of those present started fighting, Duron started to shoot but put the rifle down when a lady passed. He further stated that while Duron had the rifle in his lap "all of a sudden we heard everybody running this way, and Roberto lifted up the rifle, and I grabbed for it" and "It went off." Appellant testified that he did not intend to kill the deceased and did not kill him. Appellant further testified that he was not warned by the two officers to whom the confessions were made and that he made and signed the confessions because of physical force administered upon him by the officers striking and slapping him.

The court submitted the issue of appellant's guilt to the jury on a charge on the law of principals and also submitted to the jury the appellant's defense of accident and the issue as to the voluntary nature of appellant's two written confessions admitted in evidence.

The jury, by their verdict, resolved the disputed issues against the appellant, and we find the evidence sufficient to sustain the judgment of conviction.

Appellant predicates his appeal upon five formal bills of exception.

By Bills of Exception Nos. one and three, appellant insists that the court erred in refusing his request to retire the jury

and permit him to examine Officers Tellez and Gonzalez outside of their presence and hearing on the question of the voluntary nature of the confessions and their admissibility in evidence as a matter of law. Appellant relies upon the rule stated in Bingham v. State, 97 Texas Cr. Rep. 594, 262 S.W. 747, that when a confession is objected to on the ground that it is involuntary it becomes the duty of the court to retire the jury and hear evidence on the issue to determine the preliminary question as to whether the confession is inadmissible as a matter of law.

Each bill of exception certifies that before the confessions were read into evidence the court permitted appellant to examine the officers on voir dire in the absence of the jury.

The record reflects that after objection was made by appellant to the confessions, appellant was permitted by the court to examine the officers and offer other testimony in the absence of the jury on the question of the voluntary nature of the confessions and their admissibility as a matter of law. While the jury was not retired when first requested by appellant, the record shows that the jury was soon thereafter retired and the facts fully developed in their absence on the question of the voluntary nature of the confessions and their admissibility as a matter of law.

We find no error in the bills.

Bills of Exception Nos. two and four present appellant's contention that the court erred in admitting the confessions in evidence over his objection that they were shown to be inadmissible as a matter of law.

We find no undisputed facts in the record which would vitiate the confessions.

The fact that appellant was arrested without a warrant and was not taken forthwith before a magistrate did not, standing alone, vitiate the confessions. See: Collins v. State, 352 S.W. 2d 841, and the cases there cited. Before a confession will be held inadmissible for such reason, a causal connection must be shown between the failure to secure a warrant and take the accused forthwith before a magistrate, and the securing of the confession. There is no such showing in the present case.

Appellant's testimony that he was not warned by the officers to whom the confessions were made was denied by them in their

positive testimony that he was duly warned. Appellant's testimony that he was physically mistreated by the officers was denied by them. The officers also denied that appellant asked to use a telephone or see a lawyer. While appellant's father testified he went to the police station three times to see appellant and was not permitted to see him until 11:30 o'clock, P.M., after being told that he could not see him until the investigation was completed, Officer Gonzalez testified that he did not hear such a statement made to the father and that he first saw the father at the station at 9 o'clock, P.M., when he was permitted to talk to appellant from 9:05 P.M. to 9:35 P.M.

Under the record, the trial court correctly submitted to the jury the issues raised by the evidence as to whether appellant was duly warned and as to the voluntary nature of the confessions. Gipson v. State, 147 Texas Cr. Rep. 428, 181 S.W. 2d 76.

We do not deem the case of Haley v. State of Ohio, 332 U. S. 596, 92 L. Ed. 224, relied upon by appellant, as here controlling. In the Haley case the accused, fifteen years of age (appellant is eighteen years of age), confessed to the crime after being shown confessions of two other suspects. He was thereafter held incommunicado for over three days, during which time his mother was not allowed to see him and a lawyer retained by her was twice refused admission to see him. Such are not the facts in the instant case.

By Bill of Exception No. five, appellant complains of the court's refusal to give his requested charge on negligent homicide in the second degree. Such an issue was not raised by the evidence. Under the evidence, the issue raised was whether the shooting was intentionally done by appellant or was accidental. The court's charge to the jury on accident amply protected appellant's rights. Allen v. State, 141 Texas Cr. Rep. 94, 146 S.W. 2d 384; Fawcett v. State, 213 S.W. 2d 830, reversed on other grounds, and Cook v. State, 211 S.W. 2d 224.

No error is presented by the bill.

We find no error in the court's charge on accident, because it required the jury to find that appellant killed the deceased by accident and "not while intending to commit the offense of assault with intent to murder", or while acting as a principal with Roberto Duron to commit the offense. Under the state's theory of the evidence, appellant and Duron were preparing to make an assault with intent to murder upon the deceased and,

while so doing, did actually murder him. It was appellant's contention that the killing was by accident.

Such instruction properly incorporated the provisions of Art. 42, V.A.P.C., which eliminates accident as a defense when a homicide is committed while in the act of preparing to commit a felony. Cook v. State, supra.

Nor do we find reversible error in the court's definition of murder in the charge, which reads:

"Whoever shall voluntarily kill any person in this State shall be guilty of murder.

"Murder is distinguished from other species of homicide by the absence of circumstances which excuse or justify the killing."

The omission from the definition of the words: "which reduce the offense to negligent homicide" that are contained in the statutory definition of murder, Art. 1256, V.A.P.C., would not require a reversal of the conviction.

The judgment is affirmed.

Opinion approved by the Court.