Earnest GRISSAM, Appellant,

v.

The STATE of Texas, Appellee.

No. 39614.

Court of Criminal Appeals of Texas.

May 18, 1966.

Rehearing Denied June 22, 1966.

H. M. Hood, Borger, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

OPINION

McDONALD, Presiding Judge.

The offense is burglary; the punishment, enhanced as provided by Article 63, Vernon's Ann.P.C., life imprisonment.

Two prior convictions for felonies less than capital were properly proven by the state and admitted by appellant from the witness stand.

The evidence reveals that at about 9 P.M. on the evening of February 26, 1965, an Amarillo switchboard operator received a call from Gruver, Texas, from an unknown man who claimed he had been shot. The operator received no further response to her entreaties for more information, but heard heavy breathing for a while, then nothing. Deputy Sheriff Orville Walker was notified in Gruver, and the telephone call was subsequently traced to the Westerfield Dry Goods Company, where Mr. Westerfield was found dead near the wall telephone which was still off its hook.

Investigation disclosed that Mr. Westerfield's killer had gained entrance to the store through a restroom window, which had been broken. Footprints of an unusual design outside the store window were followed to a point about one-half mile west of the town along the highway, where they stopped. These footprints were later identified as having been made by the prison-constructed shoes of John Grissam, brother of appellant. Merchandise from the Westerfield store was found in John Grissam's house, and a .22 caliber pistol was extricated from a pond to which the investigating officers were led by the suspect. A bullet of this caliber was removed from the body of the victim. There was broken glass on the floor of the restroom of the Westerfield store; pieces of glass were found embedded in the soles of John Grissam's shoes.

Appellant's written statement was received in evidence over his objection, and it contained the following account of the events which transpired that evening.

John Grissam left his brother shortly after 8:30 P.M. in downtown Gruver, after the pair had conspired to burglarize the Westerfield store. He took with him a tire tool and a .22 caliber pistol. Appellant proceeded to the home of Deputy Sheriff Walker, the only law-enforcement officer in Gruver. Concerning the purpose of this visit, these answers were elicited from appellant while he was on the witness stand:

Q: "That was your purpose in going over there to (the deputy's house), so he couldn't interfere down there at the burglary, isn't that so?"

A: "I did not want him and my brother to get together; no, sir."

Q: Well, you didn't want him going down there to interfere with the burglarizing, did you?"

A: "No, sir."

\* \* \* \* \* \*

Q: "And that was the only reason you went out there for, was to keep Orville Walker tied up so he couldn't go down there and interfere with your brother?"

A: "Yes, sir."

Appellant later picked up his brother along the highway west of Gruver and the two returned to the brother's house after throwing the pistol in a pond.

Appellant admitted the truth of these facts when he testified in the presence of the jury.

The jury was properly instructed on the law of principals, and the evidence is sufficient to support the verdict of guilty.

Appellant contends that his conviction should be reversed because he was unlawfully arrested; because he was not taken immediately before a magistrate; and because his confession, allegedly the fruit of an illegal arrest, was erroneously admitted into evidence.

A hearing was conducted out of the presence of the jury for the purpose of determining the voluntariness of the written statement made by appellant. It was developed that the offense occurred on a Friday evening; appellant was arrested at about 2:30 P.M. on Saturday; he made a statement on Monday morning which was reduced to writing and signed in the presence of a magistrate that same morning. Testimony elicited from Sheriff J. B. Cooke, who ordered appellant's arrest, showed that by mid-day following the night of the burglary, the investigation had focused upon appellant and his brother, and the record shows that this fact was known by some of the citizens of Gruver as well as the investigating officers. The sheriff was aware that information had been disseminated to at least one representative of the press that the sheriff was preparing to arrest two ex-convicts for the offense. He was aware that both suspects had prison records, and testified that he feared that if there were further delay in effecting appellant's arrest, "he would probably flee the county." Only after repeated unsuccessful

attempts to contact both magistrates of that county did the sheriff order appellant's arrest without a warrant. Following his arrest, appellant was interrogated for approximately 30 minutes then placed in jail following which all available law-enforcement officers diverted their efforts to investigation of the killing. This brief interrogation was concerned only with the location of the gun used in the killing. The officers worked around the clock without sleep Friday and Saturday and did not again question appellant until Monday morning, when he was taken to the Sheriff's offices for interrogation. At the outset of the conversation, he was warned by County Attorney James Linn that he did not have to make a statement; that any statement he made might be used as evidence against him; and that he had a right to counsel. After brief interrogation, appellant agreed to make a statement, which was dictated to Mr. Linn's secretary. The County Attorney testified that he gave the statutory warnings "several times" during this period. Appellant was then taken before a magistrate who again warned him of his rights, after which appellant signed the statement, which included the recitation that the statement was voluntarily given and that appellant had been warned of his rights to counsel and against self-incrimination.

Appellant testified at the hearing on the voluntariness of his written statement and stated that he was in fear of his safety when he signed the statement and that one officer had slapped and threatened him during the Saturday afternoon interrogation. This allegation was denied by that officer on the witness stand.

Under the facts presented, we find no unreasonable delay in taking appellant before a magistrate, and there appears to be no abuse of discretion in the trial judge's admission of the statement into evidence. The fact that appellant was arrested without a warrant and was not taken forthwith before a magistrate does not, standing alone, vitiate the confession. Creswell v. State, Tex.Cr.App., 387 S.W.2d 887; Marrufo v. State, 172 Tex.Cr.R. 398, 357 S.W.2d 761. It is apparent from the record that appellant persisted in his desire to make a statement even after he was taken before a magistrate. He did not suffer from prolonged interrogation nor, according to all testimony but his own, was he treated in a manner contrary to the spirit or provisions of the Code of Criminal Procedure, 1925, the statutory law then in effect. There appears no causal connection between the making of the statement and the arrest without warrant or the failure to take appellant before a magistrate at the time of that arrest. Appellant's contentions are therefore overruled.

An examination of appellant's remaining informal bills of exception discloses no reversible error, and the judgment is affirmed.