Charlie Lee CROW, Petitioner,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.

Civ. A. No. 63-H-443.

United States District Court
S. D. Texas,
Houston Division.

Dec. 2, 1964.

John B. Abercrombie and Douglas Adams, Houston, Tex., for petitioner (by appointment).

Sam Wilson and Paul R. Robertson, Asst. Attys. Gen., of State of Texas, for respondent.

CONNALLY, Chief Judge.

The action is one for the writ of habeas corpus. Petitioner is confined in the Texas penitentiary under sentence and commitment from the District Court of Tarrant County, Texas, for the offense of murder with malice, for a period of from 2 to 50 years. He is proceeding here in forma pauperis and has been well represented by court-appointed counsel.

Petitioner raises the following questions. It is contended that while in custody shortly after the murder he was denied the right to confer with counsel; that a statement elicited from him was obtained without the advice of counsel, while he was suffering pain and under the influence of drugs administered therefor, and, under the circumstances, was the result of physical and mental coercion; that the procedure followed in determining the voluntary nature of plaintiff's statement in the state court trial was unconstitutional; that, on appeal, counsel was not appointed for him as a pauper, and that no statement of facts was provided for the purpose of taking an appeal from the trial court conviction.

A hearing was held November 24, 1964. The petitioner, one of the attorneys who represented him on the trial, and other witnesses were heard. After considering the evidence heard at that time, affidavits filed, etc., I make the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. I find that in the early morning hours of April 2, 1961 the petitioner and a friend (Smith) were involved in the killing of one Charles Eugene Allen, in Fort Worth, Tarrant County, Texas. Shortly following the commission of the offense, petitioner and Smith called a detective of their acquaintance and arranged to turn themselves in, and thereafter did surrender to such detective. Thereafter petition was given hospital treatment for a minor gunshot wound in the heel, and was placed in jail.

2. I find that prior to surrendering, petitioner and his associate had requested other friends to make arrangements

for legal representation; and that such friends thereafter employed Jack Love, Esq. to represent petitioner and Smith, together with others who might be charged with the offense; that thereafter Love associated with him as co-counsel A. D. Downer, Esq.

3. Contrary to petitioner's contention, I find that during the first 48 to 72 hours of his incarceration, he was not denied the opportunity to contact an attorney, and in fact was unaware of the arrangements which were being made on his behalf by his friends and family, and did not know what attorney or attorneys had been employed on his behalf.

4. I find that shortly after the employment of counsel, A. D. Downer, on April 3, 1961, while at the jail on other business and interviewing other clients, made inquiry as to whether this petitioner and his associate, Smith, were in custody, and whether he might see them; that he was advised by the jailer that an investigation was being conducted by the District Attorney into the alleged murder of the deceased, Charles Eugene Allen, and that if Downer desired to talk to petitioner, he should talk to the District Attorney about it. I find further that neither Downer nor Love pursued the matter further at that time, and did not check with the District Attorney as to whether petitioner might be interviewed until April 6, at which time both Love and Downer asked and were permitted to interview both petitioner and Smith.

5. I find that the investigation of the charges against petitioner was a difficult and complicated one, and involving enmities among a number of ex-convicts and underworld characters which stemmed, in part at least, from an earlier killing; that until such time as the petitioner gave his statement to the District Attorney, there was little evidence to justify a charge of murder against petitioner and Smith, and they might not have been held had they not surrendered voluntarily.

6. I find that both petitioner and Smith undertook to convince the investigating officers that Charles Eugene Allen was killed by one or both of them in self-defense. On April 4, the District Attorney received word that petitioner desired to submit to a polygraph test, and made the arrangements therefor. Prior to taking such polygraph test with the District Attorney, other officers and the polygraph operator present, the petitioner expressed the desire to talk to the District Attorney alone (having known the District Attorney for a number of years prior thereto). The other officers thereupon left the room and petitioner and the District Attorney discussed the case for an extended period, following which the petitioner gave the statement which was typed in his presence and with his knowledge; he read the statement and was thoroughly familiar with its contents, and he signed same. I find that it was freely and voluntarily given, after warning of his rights, and with full knowledge on his part that it might be used against him.

7. I find that the petitioner received no drugs or other medication prior to his giving the statement other than a few aspirin tablets which he received from time to time for pain; and that the contention which he advances that he was under the influence of some character of drug is palpably false and without substance.

8. I find that the statement was not in any sense a confession of guilt and was incriminating only in that the petitioner is shown to have accompanied Smith, who is shown to have been the aggressor, when he (Smith) went to seek out the deceased Allen, under circumstances where petitioner might well have known that trouble would result. It is noted that in the statement petitioner charges Smith with the killing and fixes his own participation as little more than that of an interested bystander.

9. With regard to the offer in evidence of petitioner's statement, I find that the trial court held a hearing, in the absence of the jury, as to the voluntary nature thereof; that a full and complete hearing was held during which petitioner testified on this issue; that the trial court found the statement to have been

voluntary in nature and admissible into evidence. I find that thereafter in further proceedings before the jury the defense raised the issue of the voluntary nature of such statement, the trial judge fully and correctly instructed the jury as to the law with regard thereto, whereby the jury was permitted to consider the statement only if of the view that it was voluntarily given.

10. I find that defense counsel were very pleased with the jury verdict, fixing petitioner's sentence as not to exceed 50 years; that defense counsel had been fearful petitioner would receive a death sentence. Whether counsels' less than vigorous efforts toward taking an appeal (as set out below) was influenced to any extent by this feeling that petitioner was well off is not reflected by the evidence.

11. With regard to the alleged failure of the trial court to appoint counsel for petitioner on the appeal of his case, or to furnish him a statement of facts for the purpose of showing alleged errors in the course of the trial, I find that after the conviction in the trial court Messrs. Love and Downer discussed with petitioner and with members of his family the question of taking an appeal, and pointed out that substantial expense was involved; that petitioner's mother expressed the view that she might raise the necessary funds to pay for a statement of facts and to pay the modest fee and/or expenses suggested by the attorneys for perfecting the appeal. I find that the attorneys both were competent and experienced in the trial and appeal of cases of this character, and were both familiar with the provisions of the Texas Statutes and Rules of Procedure which permit application to the trial court, within a given time, of an "in forma pauperis" affidavit whereby such statement of facts would be furnished without cost to the accused. I find that for reasons of their own, the defense counsel did not desire to take advantage of this procedure, but anticipated and expected that funds would be forthcoming in petitioner's behalf; and that his counsel deliberately waived the right to procure a statement of facts without charge.

12. I find that neither petitioner nor any one on his behalf requested the trial court or the appellate court to appoint an attorney to assist or represent him in his appeal, as an indigent person.

13. I find that petitioner's privately employed counsel had been engaged only for the trial of the case, a fact which he knew or should have known; that petitioner was well and fully represented in the trial of the case (a fact which he now concedes). I find that nevertheless his counsel assisted with the preparation of an appeal to the extent that notice of appeal was given, an original and amended motion for new trial filed and presented, and a transcript of the pleadings and orders of the Court prepared and forwarded to the Court of Criminal Appeals of Texas. I find that on this type record certain questions of law may be reviewed by the Court of Criminal Appeals of Texas (such as errors in the indictment, the charge of the Court, etc.), but that other questions may not be reviewed (as sufficiency of the evidence, rulings on the admissibility of evidence, etc.).

14. I find that under the Statutes and Rules of Procedure of Texas, there was available to petitioner means and method for securing both a statement of facts and representation by an attorney, as an indigent person, had he made application therefor in due course; but that he made no contention that he desired to take advantage of these proceedings until long after the time within which he might do so had expired.

15. Petitioner has been convicted of three felonies prior to the trial giving rise to this controversy, for burglary, for theft, and for assault to murder. The contention he has made here that he was under the influence of drugs at the time that he gave a statement to the investigating officers, and the contention (since abandoned) that his attorneys conspired with the District Attorney to secure his conviction in the state court are palpably false. I am of the view that petitioner is completely unreliable as a witness and

**22**

that little, if any, weight may be afforded to his testimony.

### CONCLUSIONS OF LAW

■■ I conclude that the statement which petitioner gave under the circumstances then prevailing was freely and voluntarily given without physical or mental coercion and was admissible in evidence against him. I conclude that the procedure followed by the trial court in determining the voluntary nature thereof whereby the question was first heard and determined by the trial judge, and thereafter submitted to the jury under appropriate instruction, afforded full recognition of the petitioner's constitutional rights (Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908). I conclude that the petitioner is not held in violation of any rights guaranteed by the Constitution or laws of the United States, that the application is without merit, and same should be denied.

Counsel for respondent will present appropriate order in due course.