Application for Writ of Habeas Corpus and for Stay of Execution of Joe Edward SMITH, Petitioner,

v.

The STATE OF TEXAS, Respondent.

Civ. A. No. 64–H–626.

United States District Court
S. D. Texas,
Houston Division.

Dec. 14, 1964.

As Modified Jan. 13, 1965.

Thompson, Hippard, Gibson, Korioth & Tita, James J. Hippard, Houston, Tex., for petitioner.

Sam Robertson, Jr., Asst. Dist. Atty., for Harris County, Tex., for respondent.

NOEL, District Judge.

Paraphrasing the language of the United States Court of Appeals for the Fifth Circuit[1] in its second opinion in this matter, 329 F.2d 498, this case is still in the throes of the piecemeal, post-conviction, collateral litigation of issues which has become the established practice where there is a conviction carrying a substantial penalty. Five years and five months after the date of the offense, the case is again before this Court on petition for writ of habeas corpus, the third. Finality has not yet been achieved although petitioner has been tried and convicted in the State District Court, appealed to the Texas Court of Criminal Appeals, submitted two applications for writ of habeas corpus to the Fifth Circuit, been before this Court four separate times on applications for writ of habeas corpus, appealed twice to the Fifth Circuit and filed with but had denied by the United States Supreme Court, a petition for writ of certiorari. Since being convicted and having had his execution set on several different occasions, petitioner has pursued further relief in various ways, but each time it has been denied.

Briefly, after a trial before a jury[2] held on April 11, 1960, the jury found petitioner Joe Edward Smith guilty of murder with malice aforethought. The statement of facts from the trial court contains the confession of Smith, that he was one of five negro youths who on July 20, 1959 were walking toward River Oaks, a residential section of Houston, Texas, around six o'clock p. m. They were on West Gray Street near Dunlavy. They met and "hit a white boy that was on a bicycle and knocked him off of it. This boy looked to be about ten or eleven. Then me and Adrian Johnson grabbed the white boy and packed him across the street to the other side of the curb. Then David Clemmons got the white boy and packed him to the little house setting on the dirt yard lot. Charles Archer was holding the white boy's mouth to keep him from hollering. David took him inside the little house. Adrian opened the door. We all went inside the little house * * *." Without quoting the revolting details as to what petitioner confessed actually occurred, it was that each of the gang of five committed anal sodomy on the boy, following which two of the negro boys "put the white boy in the ice box that was inside the little house."[3]

The white boy was William Merrill Bodenheimer, age 12, deceased. He had left his home on his bicycle to go swimming but when he did not return at the expected time, a search was commenced. His nude body was found in the refrigerator at the location described in the confession, the following day at 9:45 o'clock a. m.

This confession was admitted in evidence by the trial court over objection of the defendant's (petitioner here) counsel, and has been the subject matter in one way or another at each step of the prolonged ensuing proceedings.[4] It

1. The United States Court of Appeals for the Fifth Circuit is sometimes referred to hereinafter as the "Fifth Circuit."

2. The trial was had in the Criminal District Court of Harris County, Texas, the Honorable Edmund B. Duggan, judge presiding.

3. Neither the confession nor the statement of facts filed in the trial court contains any reference to, or any hint or suggestion of, any provocation of the five negro boys by the white boy.

4. The prior proceedings are chronologically tabulated and reviewed in part as follows:

With respect to petitioner's prior applications for writ of habeas corpus filed in this Court:

A. First application—filed Feb. 21, 1962; evidentiary hearing held Feb. 23, 1962; dismissed and stay of execution granted Feb. 23, 1962.

(1) Opinion of this Court filed May 7, 1962, reported Smith v. Heard, 214 F.Supp. 909 (1962).

(2) Opinion of the Fifth Circuit affirming, filed Apr. 4, 1963, rehearing

is the subject matter of this attack, as it was in petitioner's first and second petitions.[5]

Petitioner now claims violation of his right to a fair trial guaranteed him under the Fourteenth Amendment of the Constitution of the United States, in that the trial judge did not make a preliminary finding himself, without the aid of the jury and out of the presence of the

denied May 16, 1963, reported 315 F. 2d 692 (1963).

(3) Petitioner's petition for writ of certiorari to United States Supreme Court denied, 375 U.S. 883, 84 S.Ct. 154, 11 L.Ed.2d 113 (1963).

B. Second application—filed Nov. 5, 1963; denied Nov. 6, 1963 without prejudice to its being refiled or reinstated after exhaustion of state remedies; reinstated Nov. 7, 1963 upon motion of petitioner, after exhaustion of state remedies by filing and denial of writ of habeas corpus in Texas Court of Criminal Appeals; petitioner granted 30-day stay of execution Nov. 7, 1963.

(1) Opinion and order of this Court filed Nov. 21, 1963, dismissing petition and denying order of probable cause for appeal in forma pauperis and stay of execution, reported 225 F.Supp. 150 (1963).

(2) Order of the Fifth Circuit granting stay of execution and right to appeal in forma pauperis, granted Dec. 4, 1963.

(3) Opinion of the Fifth Circuit affirming denial of second application for writ of habeas corpus, filed May 30, 1964, motion for rehearing and en banc hearing denied May 11, 1964, reported 329 F.2d 498.

(4) Pursuant to petitioner's petition for same, the Fifth Circuit stayed its mandate for a period of 90 days, May 20, 1964 (the motion not being before this Court but it appearing that the stay was requested in order to permit petitioner to apply to the Supreme Court of the United States for writ of certiorari).

(5) Petitioner never applied for writ of certiorari. Instead, he filed a motion with the Fifth Circuit on September 2, 1964 requesting that the mandate be further stayed, the judgment of the Court of Criminal Appeals of Texas be vacated, and the case be remanded to the state district court. The basis for this further request was alleged deprivation of constitutional rights under Jackson v. Denno, infra.

Petitioner's reasons for failing to file a petition for writ of certiorari to the United States Supreme Court are expressed in his motion to further stay mandate as follows:

"On 20 May 1964 this Court issued a stay of mandate in the above cause (in which the Court affirmed the District Court's denial of appellant's application for writ of habeas corpus) to enable appellant to apply for a writ of certiorari from the Supreme Court of the United States. An intensive reexamination of the law in light of the Court's opinion has convinced counsel for appellant of the futility of such application and so none has been made."

(6) Petitioner's motion next above described denied, Sep. 24, 1964.

C. Third application—filed Dec. 2, 1964, following denial by the Court of Criminal Appeals of the State of Texas on Dec. 1, 1964 of petitioner's second petition for writ of habeas corpus filed in that Court on Nov. 30, 1964.

5. Briefly stated, the contentions of petitioner as contained in his first and second applications for writ of habeas corpus filed in this Court were as follows:

The First:

(a) That his arrest being without warrant was illegal and

(b) That his confession was not freely and voluntarily made, and therefore was obtained in violation of the Fourteenth Amendment of the Constitution of the United States as well as Art. 217, Vernon's Annotated Code of Criminal Procedure of the State of Texas, since petitioner was not taken before a magistrate.

The Second:

(a) That the State failed to introduce evidence establishing all of the basic elements of the crime charged and

(b) That the proof offered did not fulfill the requirements of Texas law and therefore his confession constituted denial of equal protection of the law under the United States and Texas Constitutions.

After full hearings this Court dismissed both of the petitions. It was affirmed in each instance by the Fifth Circuit. However, an additional ground first urged in that Court was the main thrust of petitioner's argument. It was that the prosecution failed to meet its burden of establishing the corpus delicti under Texas law. Most of the Court's opinion was addressed to this point.

jury, that the above confession was voluntary, but on the other hand, left for the determination by the jury together with its determination of the guilt or innocence of petitioner, the question of whether the confession was voluntarily made. Petitioner relies solely upon the case of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

The Jackson decision was the sole predicate for petitioner's motion to further stay mandate; to vacate the judgment of the Court of Criminal Appeals; and to remand the case to the District Court, filed in the United States Court of Appeals for the Fifth Circuit before its mandate had issued in petitioner's second appeal from the action of this Court, on September 2, 1964. See footnote 4, sub-section B.(5) of this opinion. Petitioner urged the Fifth Circuit to reopen the appeal from this Court's dismissal of petitioner's second application for writ of habeas corpus, to vacate the judgments of all other courts and to allow the Criminal District Court of Harris County, Texas, a reasonable time to institute further proceedings not inconsistent with the requirements of Jackson. In his brief filed in support of the motion, petitioner also urged that the Fifth Circuit had the *power* to stay or recall its mandate, to reopen the case and to make such disposition of the case as justice might require, citing Meredith v. Fair, 306 F.2d 374 (5th Cir. 1962). The Court denied petitioner's motion. While no opinion was written on the denial of the motion by the Fifth Circuit, this Court is of the opinion that such denial

was, of necessity, preceded by a determination by the Fifth Circuit that petitioner's case does not fall within the proscriptions of Jackson.[6]

But aside from the question of whether or not the contentions of petitioner have been rejected by the Fifth Circuit, a precise measurement of his most recently claimed constitutional deprivation against the proscriptions of Jackson demonstrates that he is incorrect in his understanding of the teachings of that case and is not entitled to his writ.

In Jackson the Supreme Court gave express approval to the Wigmore or Orthodox procedure for determining the voluntariness of confessions, and express disapproval to the New York procedure. The Wigmore procedure provides that the trial judge himself solely and finally must determine the voluntariness of the confession.[7] The New York procedure is that the trial judge makes a preliminary determination regarding a confession and excludes it if in no circumstance could the confession be deemed voluntary, but if the evidence presents a fair question as to its voluntariness, as where certain facts bearing on the issue are in dispute or where reasonable men could differ over the inferences to be drawn from undisputed facts, the judge must receive the confession and leave to the jury, under proper instructions, the ultimate determination of its voluntary character and also its truthfulness.[8]

While the Jackson case came up from New York, not Massachusetts, the Court discussed and expressly approved the

---

6. The opinion of the Court composed of Judges Hutcheson and Bell of the Fifth Circuit and United States District Judge Brewster who was sitting on the panel, was written by Judge Brewster. This district judge, prior to his appointment to the bench, was a unique and distinguished trial lawyer, especially so in that he was a recognized expert in the trial of criminal as well as civil matters. As the opinion reflects, the Court thoroughly understood the questions of purely local,

Texas criminal law, first urged by petitioner before that Court. For these additional reasons, this Court is impelled to the view that in denying petitioner's motion to vacate, etc., the Fifth Circuit did so with a full appreciation of the factual distinction between Jackson and petitioner's case.

7. Jackson v. Denno, 378 U.S. at 377, 84 S.Ct. 1774.

8. Op.Cit., at 378, 84 S.Ct. 1774.

Massachusetts procedure.[9] The latter is that the trial judge hears all the evidence, resolves evidentiary conflicts, and makes his own judgment as to the voluntariness issue, rejecting confessions he deems involuntary and admitting only those he believes voluntary. Having first determined it to be voluntary, the confession is admitted in evidence and submitted to the jury with instructions that the jury must find the confession voluntary before it may consider it.[10] Thus, as distinguished from the New York procedure, the judge may, indeed must, weigh the evidence as to voluntariness first, before permitting it to be weighed by the jury. The judge may reject and not even admit the confession in evidence if he is not persuaded as to its voluntariness.

Texas courts have had no occasion to categorize or label its procedure for determining the voluntariness of a confession. It would appear that the Wigmore or Orthodox procedure is not used or recognized in Texas.[11] Without labeling the Texas procedure as the equivalent of either the New York or Massachusetts procedures (as such are labeled in Jackson), an examination of the pertinent Texas cases reveals that it is within the discretion of the trial judge to determine which of these two procedures he will follow. This discretion was clearly recognized by the Court of Criminal Appeals of Texas in Wheatley v. State, 117 Tex. Cr.R. 599, 34 S.W.2d 876 (1931).[12] Moreover, this discretion, or at least the absence of any prevailing policy in Texas requiring the application of the New York procedure by the trial court,[13] was evident from the recent opinion of Judge Ben C. Connally in Crow v. Beto, 237 F.Supp. 19 (S.D.Tex.1964). There, it was held that the state district judge had met the requirements of Jackson v. Denno prior to submitting the confession to the jury. Furthermore, it is the opinion of this Court that the United States Supreme Court in Jackson correctly evaluated Bingham v. State, 97 Tex.Cr.R. 594, 262 S.W. 747 (1924), when it asserted that that opinion clearly held it to be reversible error not to give the tendered confession such preliminary consideration as required by the Massachusetts procedure, before admitting it in evidence.[14] Thus, it cannot be

9. The majority in the Jackson case stated "Given the integrity of the preliminary proceedings before the judge, the Massachusetts procedure does not, in our opinion, pose hazards to the rights of the defendant." 378 U.S. at 378, 84 S.Ct. at 1781 in footnote 8.
   Under the Massachusetts procedure, it is immaterial that the jury is present when the predicate for admissibility of the confession is laid, for once the confession is found voluntary and admitted, the jury only hears what it would have heard anyway.

10. Jackson v. Denno, supra note 7, at 378, 84 S.Ct. at 1781 in footnote 8.

11. See 2 McCormick & Ray, Texas Law of Evidence § 1222 (2d ed.).

12. 34 S.W.2d 876 (1931). See also Bridges v. State, 102 Tex.Cr.R. 462, 277 S.W. 1096 (1925); and 2 McCormick & Ray, Tex. Law of Evidence § 1222 (2d ed.).

13. Viewed most favorably to petitioner, it can clearly be said that Texas does not have a clear-cut policy *requiring* the application of the New York procedure. Appendix A to the majority opinion in Jackson v. Denno lists Texas among those states where it is uncertain whether the New York or Massachusetts procedure is followed.
    While the United States Supreme Court per curiam opinion of Boles v. Stevenson, 85 S.Ct. 174 (1964), declared a denial of constitutional rights in a situation where it was unclear what procedure was used in determining voluntariness, that case, like Jackson, is distinguished on its facts from petitioner's case, for the trial judge here clearly and unequivocally testified (without so labeling his procedure) that he followed the Massachusetts procedure in all of his trials, including that of petitioner.

14. See Jackson v. Denno, supra note 7, App. A to majority opinion, 378 U.S. at p. 399, 84 S.Ct. at p. 1792.

said that at the time of petitioner's trial a clear requirement existed that Texas trial judges follow the Jackson-prohibited New York procedure in determining the voluntariness of a confession.

In the final analysis, therefore, the problem is not one of evaluating labels or categorizing procedures under particular labels. Put very simply, the problem or question here is, did the Texas trial court give the confession of Joe Edward Smith that character and quality of preliminary consideration as to voluntariness required by the new concept of the requirements of the due process clause delineated in Jackson, before permitting the jury to consider the confession in its deliberations?

The question here is not, as counsel for petitioner would put it, whether the jury was present or not present, at the time the trial court heard the predicate laid by the prosecution for the admissibility of petitioner's confession. The removal of the jury at such a time is not required by the teachings of Jackson. Although the Court in discussing the Massachusetts procedure [15] does state that the judge's consideration of voluntariness is carried out separately and aside from issues of the reliability of the confession and the guilt or innocence of the accused, this merely states the requirement that the initial determination of voluntariness be made without considering the truthfulness of the confession or evidence as to innocence or guilt; thus, in the case of a trial by jury, by the judge rather than by the jury. Additionally, cases [16] from states asserted by Mr. Justice Black, in Appendix A of his opinion in Jackson, as following the Wigmore or Orthodox procedure and also the Massachusetts procedure have held "no reversible error" where the jury was not removed during such a hearing.

The actual reasoning or purpose behind the holding of Jackson does not require the removal of the jury during such a hearing. The Court in Jackson felt that allowing the same jury to rule on voluntariness that ruled on guilt or innocence might cause that jury to conclude from evidence demonstrating guilt that the confession was truthful and therefore voluntary. The Court also felt that where a jury returned only a general verdict, it would be impossible to discover whether the jury found the confession voluntary and relied upon it, or involuntary, thereby disregarding it and adjudicating guilt upon other evidence. These problems sought to be remedied by Jackson do not occur when a trial judge determines the issue of voluntariness in the presence of the jury.

A further problem is possibly sought to be remedied by Jackson, which problem at first blush might appear to be present where a judge holds a hearing and rules on voluntariness in the presence of the jury. This is that an accused may well be deterred from testifying on the voluntariness issue when the jury is present because of his vulnerability to impeachment by proof of prior convictions and to broad cross-examination, although he is perhaps the only source of testimony on the facts underlying the claim of coercion. Where this occurs, the determination of voluntariness is made upon less than all of the relevant testimony. Indeed, the United States Supreme Court in Carignan v. United States, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48 (1951) held it to be reversible error for a federal court to refuse a defendant the opportunity to testify before the judge out of the presence of the jury on the voluntariness question.

This problem, however, is premised upon a refusal of a request to allow the accused to testify outside the presence

15. See Jackson v. Denno, supra note 7, at 378, 84 S.Ct. at 1781 in footnote 8.

16. State v. Green, 221 La. 713, 60 So. 2d 208, 213 (1952); State v. Barker, 56 Wash. 510, 106 P. 133 (1910); Harrold v. Territory, 18 Okl. 395, 89 P. 202, 10 L.R.A.,N.S., 604 (1907).

of the jury. If such request is not made and if it can be shown that it would have been granted if it had been made, this Court is at a loss to see how constitutional rights would be violated by defense counsel's trial tactic of wanting the jury to remain during the hearing, particularly where the accused intends to testify.

The record of petitioner's trial discloses that no request for the exclusion of the jury during the hearing on voluntariness was ever made, and it also discloses the petitioner voluntarily testified on this issue. Moreover, the state trial judge, Judge E. B. Duggan, testified at this Court's evidentiary hearing on petitioner's application for writ of habeas corpus as follows:

"Q Judge Duggan, if Mr. Winfree, Sr. had requested that the jury be retired so that there could be some kind of a hearing concerning the voluntariness of the confession, you would not have hesitated to retire the jury, would you?

"A No, sir." [17]

The fact that the jury is entitled to *reconsider* the trial judge's ruling of voluntariness at the same time it considers innocence or guilt has not been disapproved by the United States Supreme Court for the obvious reason that its application results in no prejudice to the defendant.

■ Therefore, the question here is narrowed to whether the trial judge made an independent determination of the voluntariness of the confession.

The record of the proceedings of petitioner's trial does not contain an express finding of the trial judge asserting that he has held a separate and independent hearing, and it does not reflect separate and independent findings on the admissibility of the confession.[18] Had such appeared in the record, it is doubtful petitioner would be here again. In any event there would be no reason to make further inquiry, for the requirements of Jackson obviously would have been met. While the official record is silent as to these matters, a procedure for obtaining a clear record as to them was available to petitioner's counsel. Specifically, if petitioner desired a clear ruling on or a clarification of a prior ruling as to voluntariness by the state trial judge, machinery was available to him at the time he last sought relief directly from the Court of Criminal Appeals rather than the Criminal District Court of Harris County, through Art. 119 of the Texas Code of Criminal Procedure.[19] Petitioner did not avail himself of this opportunity.

Without the benefit of complete knowledge and not having had time to brief the point, this Court pointed out to counsel at the hearing on Friday, December 4, 1964, the possibility of the existence of such an opportunity, and permitted counsel to consider overnight whether he

17. Page 37, lines 3–8 of the record of this Court's proceedings on December 4–5, 1964.

18. Jackson does not require that trial judges following the Massachusetts procedure make express findings of fact and conclusions of law, for it merely states that under this procedure " * * * the judge's conclusions are clearly evident from the record since he either admits the confession into evidence if it is voluntary or rejects it if involuntary. Moreover, his findings upon disputed issues of fact are expressly stated *or may be ascertainable from the record.*"

[Emphasis supplied.] 378 U.S. at 378–379, 84 S.Ct. at 1782.

19. Art. 119 provides in part: "After final conviction in any felony case the writ [of habeas corpus] must be made returnable to the Court of Criminal Appeals of Texas at Austin, Texas. The writ may issue upon the order of any district judge, and said judge may upon presentation to him of a petition for said writ, set the same down for a hearing as to whether the writ should issue, and ascertain the facts, which facts shall be transmitted to the Court of Criminal Appeals with the return of the writ if same is issued after such hearing."

could and should pursue such opportunity, if available.[20] Counsel for petitioner declined this opportunity. He then and now states that such procedure is foreclosed by virtue of petitioner having first filed his petition for writ of habeas corpus on the question raised here, in the Court of Criminal Appeals and that Court having taken final action thereon.[21] Thus, petitioner's dilemma, if it be one, is of counsel's making, for the last State application for writ of habeas corpus could have been first filed with the state district judge.

While petitioner has not obtained a formal record containing a definitive statement from the trial judge on the manner of the determination of voluntariness made in the trial, nor a separate hearing devoted to ascertaining the manner of the determination of voluntariness, he could have but elected not to do so. Nonetheless, this Court has before it the testimony of the able and experienced state trial judge given during the late afternoon session of Friday, December 4, 1964. Upon direct examination and very careful cross-examination by counsel for petitioner, the trial judge made crystal clear that he made his own independent determination that the confession of Joe Edward Smith was voluntary, before admitting it in evidence for consideration by the jury at the trial.

In testimony the judge explained, but did not identify with any particular state or by name, the procedure he followed in making his determination concerning voluntariness. However, he did show a

clear understanding of the Texas law concerning admissibility of confessions. Of equal importance, he referred to the most important tool of the judicial trade, his conscience. It is also worth noting that the judge's testimony shows that he always makes the same kind of determination required under the teachings of Jackson, in order to assure a defendant fair treatment. While all of the judge's testimony supports the conclusion I reach here, the most significant questions and answers made during examination are the following:

"Q Then you would say to the Court here that you did or did not make a determination that the statement was certainly not involuntary?

"A I would say that in my own mind I made the decision that the statement was voluntary, yes, sir.

"Q Otherwise, you would not have let the trial proceed with that under consideration by the jury?

"A Yes, sir." [22]

Further significant answers were given during cross-examination. They are as follows:

"Q * * * The point I am trying to clarify here is where there is a fact issue, conflicting testimony has been presented to you by each side as to the voluntariness of the confession, you would leave that to the jury for ultimate decisions?

"A Mr. Hippard, I have to live with my own conscience. Now, I

---

20. Pages 68–73 of the record of this Court's proceedings on December 4–5, 1964.

21. In response to the Court's suggestion as to the possible existence of such an opportunity, petitioner's counsel has submitted a brief to the Court in which he cites State ex rel. Wilson v. Briggs, 171 Tex.Cr.R. 479, 351 S.W.2d 892 (1961), where the Court after asserting that the original jurisdiction of the Court of Criminal Appeals to issue writs of habeas corpus is unlimited, stated, "The

Court of Criminal Appeals is the court of last resort in this state in criminal matters. This being so, no other court of this state has authority to overrule or circumvent its decisions, or disobey its mandates." Ex Parte Stickney, 171 Tex.Cr.R. 303, 349 S.W.2d 732 (1961), contains language of similar import.

22. Page 52, lines 6–13 of the record of this Court's proceedings on December 4–5, 1964.

make formal findings of fact and law. We didn't do it in those days. We were not required to. But as I go along, I decide in my own mind that it is voluntary or I wouldnt' submit it to the jury. But even though in my own mind I feel that the confession is voluntary under the law of the state, I still have to submit the fact issue to the jury.

"Q Just to be sure that I made myself clear, looking at it from the other side, so to speak, as I understand your answer, if it is clearly involuntary, you would of course so rule?

"A Yes, sir.

"Q I am thinking of the situation where it is not clearly voluntary or clearly involuntary and there is highly conflicting testimony with regard to it, do I understand then that you submit it to the jury after deciding subjectively to yourself that it is something that is voluntary, or do you decide that it is something that the jury will ultimately decide?

"A I have to go through the same mental gymnastics and I have to feel that in my own mind it is voluntary even though the evidence is highly conflicting before I let it go to the jury, and then they still have to pass on it.

"Q The thing I am searching for, Judge, the situation where you feel it is obviously voluntary and the one where there is a doubt.

"A Frankly, in your own mind, you have to make a decision.

"THE COURT: If there is a doubt, you resolve it yourself?

"THE WITNESS: You resolve the doubt in your own mind. This is one of the few fields in which the judge has the right to make a finding as to any disputed issue.

"THE COURT: Disputed issue of fact. It is a disputed issue of fact that you must make a previous determination, whether you write it in the record or don't write it in the record. Is that what you are saying, sir?

"THE WITNESS: Yes, sir.

"MR. HIPPARD: I have no further questions, Your Honor." [23]

In my opinion, the most illuminating single answer given by Judge Duggan was that "You resolve the doubt in your own mind. *This is one of the few fields in which the judge has the right to make a finding as to any disputed issue. * * Disputed issue of fact. * * * Yes, sir.*" In these words, the judge gave the complete answer to petitioner's contention. The able trial judge showed a clear understanding of his responsibility under the law, recognized in Wheatley v. State, 117 Tex.Cr.R. 599, 34 S.W.2d 876 (1931), and that in making such a finding he was *initially* deciding a disputed fact issue. Pinpointed, it is the initial decision of this fact issue (if disputed) by the trial judge, rather than the compulsory submission of same to the jury, which distinguishes and makes constitutionally acceptable the Massachusetts procedure as opposed to the condemned New York procedure.

Accordingly, I find as a fact that in the trial of petitioner Joe Edward Smith conducted by the Honorable Edmund B. Duggan, Judge of the Criminal District Court of Harris County, Texas, on April 11, 1960, before admitting the confession of petitioner in evidence and before permitting the jury to consider it, Judge Duggan made a clear-cut, preliminary determination that the confession was voluntarily given. Therefore, petitioner was not denied any right guaranteed him

23. Page 54, line 15—page 56, line 16 of the record of this Court's proceedings on December 4-5, 1964.

by the United States Constitution and delineated in Jackson v. Denno.[24]

Petitioner's petition for writ of habeas corpus and his request for stay of execution are denied.

**24.** The action of the United States Supreme Court and the ensuing action of the Court of Criminal Appeals of Texas in the cases of Lopez v. Texas, 366 S.W. 2d 587 (1963), vacated and remanded on the authority of Jackson, reported 378 U.S. 567, 84 S.Ct. 1924, 12 L.Ed.2d 1038 (1964), and on remand granting a new trial, No. 35,267 (Nov. 11, 1964) ; and Harris v. Texas, Tex.Cr.App., 370 S.W. 2d 886 (1963), vacated and remanded on the authority of Jackson, reported 378 U.S. 572, 84 S.Ct. 1930, 12 L.Ed.2d 1040 (1964), and on remand granting a new trial, No. 35,654 (Nov. 11, 1964), have no bearing on this case.

While not familiar with the record and having no reason to familiarize myself with the record in those cases, the procedures followed by the trial judges there may well have been substantially the same as New York. Whether or not the procedures followed in those cases failed to meet the requirements of Jackson, and the fact that the Court of Criminal Appeals of Texas in the Lopez case established specific instructions in reference to future determinations of voluntariness by Texas trial judges, have no bearing on and give no indication whatsoever of whether the procedure here was in violation of the Jackson tenets. On the other hand, the action of the Court of Criminal Appeals in denying petitioner's second writ of habeas corpus before it on December 1, 1964, in which petitioner made the same contentions as in his third petition here, which occurred subsequent to that Court's action in the two previously-mentioned cases and after that Court specified the procedure to follow before admitting confessions in future trials, constitutes a clear recognition or holding that the procedure used in petitioner's trial did fully comply with the requirements of Jackson v. Denno.

Although the Court of Criminal Appeals in the Lopez and Harris cases held that new trials, rather than hearings on the voluntariness of the confessions, had to be given, it did so because these cases were before it on appeal, and as an appellate court, all it could do was reverse and render or reverse and remand. The instant case involves a habeas corpus proceeding.