**Ex parte Edwin Marious BERTSCH.**

No. 38092.

Court of Criminal Appeals of Texas.

June 16, 1965.

Rehearing Denied Oct. 20, 1965.

Second Motion for Rehearing Denied
Dec. 1, 1965.

Clyde W. Woody, Houston; John P. Farra, Houston, on rehearing, for relator.

Wallace T. Barber, Dist. Atty., San Marcos, Gilbert Pena, Asst. Atty. Gen., Austin, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

This is a post-conviction proceeding initiated by the Honorable James Noel, Judge of the United States District Court for the Southern District of Texas by order dated

February 3, 1965, Bertsch v. Beto, 242 F. Supp. 52, which was made subsequent to the affirmance of petitioner's conviction by this Court. Bertsch v. State, Tex.Cr.App., 379 S.W.2d 657. On March 19, 1965, this Court directed the trial court to hear evidence and to certify to this Court the facts relative to the following grounds alleged by petitioner in his application before Judge Noel:

"(1) The Jackson v. Denno [378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908] proscribed submission of the question of the voluntariness of a confession to the jury determining innocence and guilt, without a prior determination of that voluntariness.

(2) The admission into evidence of petitioner's confession which was procured without compliance with Rule 5a of the Federal Rules of Criminal Procedure, alleged to be applicable to the State of Texas.

(3) The failure of the State to afford the petitioner effective assistance of counsel at all stages of the prosecution, particularly at the stage when the confession was obtained from him."

This Court also required the trial court to hear evidence as to whether or not petitioner had been deprived of due process in his trial because of the association of the Sheriff with the jury under the rule announced in Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424. This question will be discussed under our paragraph no. (4) later in this opinion.

A hearing was had and petitioner was present and was represented by counsel of his own choosing.

We shall discuss the record before us in the light of the above four questions.

■ (1) Judge Dittert stated at a hearing in answer to petitioner's attorney's question as follows: "This Court always makes an initial determination of the voluntariness of the confession before it is admitted into evidence, and that was done in this case." This is almost the exact language commended by Judge Noel in Smith v. State of Texas, D.C., 236 F.Supp. 857. In addition, Judge Dittert has sent to this Court a certification of the voluntariness of this confession in which he certified that he found initially as a matter of law that the confession was voluntarily made and that he further resolved, determined and decided conflicting and disputed issues of fact, and found beyond a reasonable doubt, without regard to the truth or falsity of the confession, that the confession was freely and voluntarily made.

■ (2) He further found and the record of the hearing discloses that petitioner was arrested between 5:30 and 6:30 p. m. on Sunday night and placed in jail, that he was interrogated by no one until the following morning and that the local Justice of the Peace being sick or deceased, no magistrate was available until later that day subsequent to the making of the confession, when a Justice of the Peace from an adjoining precinct came to the courthouse and petitioner was carried before him.

This Court is not inclined to accept as binding upon us the five minute rule announced in Alston v. United States, D.C. Cir., 348 F.2d 72. We know of no case in which a state court case has been decided under the Alston rule.

■ (3) Judge Dittert certified and the record supports the fact that appellant made no request to see an attorney or have one appointed for him prior to the making of the confession. This Court has recently held in Marion v. State, Tex.Cr.App., 387 S.W.2d 56, that where a telephone was nearby and the accused was told that he

might use it to call a lawyer that the confession thereafter made was admissible under the rule in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. Recently, in Corry v. State, Tex.Cr.App., 390 S.W.2d 763 (May 26, 1965) we held that where the accused testified on the trial, as did petitioner in his case, and failed to mention the fact that he had requested an attorney prior to making the confession, the Escobedo rule had no application. We adhere to our prior holding. We do not view the action of the Supreme Court of the United States (June 1, 1965) 85 S.Ct. 1765, in denying review without written opinion to the ruling of the Supreme Court of California in People v. Dorado, 40 Cal.Rptr. 264, 394 P.2d 952, as requiring that in all state court cases an attorney must be made available to an accused whether he asks for one or not.

■ (4) We have examined the record made in Judge Dittert's Court with care and have concluded that a serious question would be presented were Turner v. State of Louisiana, supra, held to operate retroactively. It must be remembered that the matter before us here is not an appeal, but a collateral attack. As we view the recent opinions of the Supreme Court of the United States in Linkletter v. Walker, 85 S.Ct. 1731 (June 7, 1965) and Angelet v. Fay, 85 S.Ct. 1750 (June 7, 1965), it is the view of the Supreme Court that only those cases of the type set forth therein have been held to have retroactive application. We adopt the following phraseology from Linkletter: "The past cannot always be erased by a new judicial declaration." If this be a correct interpretation, then Turner v. State of Louisiana, supra, is not to be given retroactive application and cannot be the basis for the granting of the writ in the case at bar.

The writ of habeas corpus is denied.

WOODLEY, J., concurs in the denial of the petition to this Court for writ of habeas corpus.

## ON PETITIONER'S MOTION FOR REHEARING

McDONALD, Presiding Judge.

■ Petitioner's able counsel has filed an exhaustive brief in support of his motion for rehearing herein. He again complains of the trial judge's determination and certification that he found initially as a matter of law that the confession was voluntarily made. We have with great care reviewed the entire record in the trial of this cause which was before us in Bertsch v. State, Tex.Cr.App., 379 S.W.2d 657, as well as the record on this habeas corpus proceeding. We reiterate, as stated in our original opinion, that no objection was taken to the confession at the time it was admitted in evidence at the trial of this cause. No proof was adduced as to any coercion, no issue was raised or created as to the voluntary nature of the confession. While learned counsel insists that Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, required an instruction from the Court to the jury on the voluntariness of the confession, we disagree. Such an instruction, in the state of the record before us, would have had the effect of submitting to the jury for their determination the exact question condemned by the U. S. Supreme Court in the Jackson v. Denno case. There was no factual basis, no issue, in the evidence that even remotely required the submission of such an issue to the jury. Additionally, Judge Dittert, the trial judge, made an independent determination and finding, as shown by the record, that the confession was voluntarily made, and he so held that it was voluntary as a matter of law. We overrule petitioner's contention once more.

Petitioner relies heavily upon the opinion of the 5th Circuit Court of Appeals in the case of Collins v. Beto, 348 F.2d 823, and correctly states that the 5th Circuit adopted the rule announced by the California Supreme Court in People v. Dorado, 40 Cal. Rptr. 264, 394 P.2d 952, which two cases

hold that a request for counsel is immaterial. However, we observe that in both of these cases neither petitioner nor defendant was apprised of his right to counsel. In the case at bar, petitioner was told of this right by Deputy Sheriff Adamcik, a witness for the defense, as shown from the testimony on the voluntary nature of the confession:

> Q: "But you did let him know that if he wanted to get an attorney, not talking about the Court appointing him an attorney, but if he wanted to get an attorney at that time he could?"
> A: "Yes, sir, that was the first question I asked him, if he has got an attorney."

Later on in his testimony Deputy Adamcik testified, "He understood that when I first asked him the question about if he has got an attorney. We went through that." The record reflects that appellant made no type of request whatever for an attorney, either to be employed by him, or appointed for him by the Court. It is significant to observe that upon his trial petitioner was represented by two attorneys of his own choosing, employed by him. Petitioner here is not in the category of Collins. In that case Judge Tuttle said, "Petitioner was not advised of his right to consult a lawyer." Here, petitioner was advised by Adamcik of his right to be represented by an attorney. Adamcik, the record shows, was his friend of a lifetime, and he talked with petitioner in both the English and Czech language so that petitioner would fully understand all that Adamcik told him. We find no basis to apply the two foregoing holdings to the facts in this case. This contention is again respectfully denied.

Lastly, petitioner urges that our holding on original submission of this cause was in error wherein we gave application to the rule retrospectively announced in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, to Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed. 2d 424. While this writer is inclined to the view that petitioner is correct in his contention that Linkletter does not preclude the giving of a retroactive interpretation to Turner, supra, we feel that the facts in Turner's case are radically different and a great deal more far-reaching than the facts in the case at bar. The two deputy sheriffs in Turner's case were the principal prosecuting witnesses. They were in continuous and intimate association with the jurors, eating and conversing with them and doing errands for them. Turner's counsel not only objected to the testimony of these two deputies when they took the stand, but he moved for a mistrial, and he later urged this same contention when he made a motion for a new trial after the verdict of death. The testimony of these two deputies was not confined to some uncontroverted or merely formal aspect of the case for the prosecution. These deputies made an investigation at the murder scene, took Turner into custody, and Turner led them to a place in the woods where the cartridge clip from the murder weapon was recovered. Deputy Simmons corroborated Rispone, the other deputy, and told of certain damaging admissions which he said had been made by Turner at the time of his apprehension. Simmons also testified about prevailing upon Turner to make a written confession, introduced in evidence.

The record in this case discloses that Sheriff Flournoy took the jury to one meal and transported part of them in his car to a nearby motel.

Deputy Prilop took the jury to two meals. It was Deputy Adamcik who spend the night with them, but he did not testify in the trial of this case on its merits, but only upon the post-conviction habeas corpus hearing.

Deputy Prilop's testimony, consisting of only seven pages in the statement of facts, reflects that he received a call to go to the home of Edwin Bertsch on the evening in question. When he arrived Bertsch was sitting on the front porch of his home and

Mrs. Bertsch and the 6 year old daughter of the couple were in the front yard screaming and crying. He saw a 12 gauge shotgun near the petitioner. The gun was of the pump type, later offered in evidence. He examined the gun and one empty shell was jammed in the gun and there were two shells in the magazine. He arrested the petitioner and took him to jail.

Dr. David Wade testified that he was an Austin psychiatrist; that Sheriff Flournoy brought petitioner to him on October 9, 1962, and he examined him. "He was of sound mind at the time of the examination, and he was of sound mind two days before that." The doctor testified that the examination took a little bit longer than an hour.

Sheriff Flournoy testified and identified the 3 shotgun shells turned over to him. He went to the Bertsch home in response to a radio message. Mrs. Bertsch was on the porch, and he went in the house and saw the body of the dead girl. He then called a photographer to come out to the Bertsch home and make some pictures. He testified that the pictures truly represented that which they purported to show. They were admitted into evidence. The only objection taken to their introduction was, "The man who took the picture is not here." The sheriff then described the wounds that he found on the body. He saw the petitioner possibly an hour later at the jail, but he did not talk with him until the next morning, at which time petitioner made a statement, later admitted into evidence without objection. The entire testimony of Sheriff Flournoy is 17 pages.

The state previously adduced testimony from the undertaker, Ernest Seidel, and from an embalmer, Clyde Owens. They told of picking up the body and described the wounds on the body.

The state rested its case after Sheriff Flournoy's testimony.

Petitioner's wife, Mrs. Lillian Bertsch, was the first defense witness. She testified that she "heard a big bang and *seen* her just falling down." "I laid her down * * and I walked right in, and I met Edwin, and he had been standing with the gun in his hands, and I spoke to him * * * I said, 'Did you do this?' because he had the gun in his hand, and I realized that he must have. He didn't answer me, and I said, 'Why did you do it?', and he didn't answer me, and he was just standing there dumbfounded, wouldn't answer anything, and standing there and holding that gun like he was holding it, and *trying to work it* or something." Mrs. Bertsch's testimony encompassed 20 pages in the statement of facts.

Edwin Marious Bertsch, the petitioner, testified as to his background as a grocer and carpenter. He identified the gun in the evidence as his own. He related that he had gone to two beer joints to try and locate Vernon Schoppa. He drank some beer, did not find Schoppa, went home and tried to take a nap. He couldn't sleep so he got up. "I decided I was going to get up and clean the old gun". He related that when he started through the door to get a can of oil out of his car, "That was when the gun went off, and I don't know what happened after that, and I walked out through that door." "I don't know what happened. The shot went off, and when somebody hollered, when they hollered I was off. I didn't know nothing. I fell, and I don't remember nothing since." He testified that the next thing he remembered was Mr. Prilop shaking him. His testimony was 23 pages in length.

Vernon Schoppa was a defense witness, but he adduced no significant testimony. He just related working with petitioner.

Freddy Bertsch, petitioner's 15 year old son, testified to finding an oil can in his father's car. His testimony on cross-examination refutes his father's (petitioner) testimony in that Mr. Bertsch had denied that his son had started working so young at a beer joint. The witness related that he went to work at a Mexican beer joint when

he was 13½ years of age, slept and ate there and that his father either would not help or could not help Rose Marie finish high school, and she went to Houston to finish.

Edwin H. Bertsch, Jr., told of hunting frequently with the shotgun (the death weapon), and the gun had gone off on him and his brother. He did not remember telling his father about this defect. He further testified that his father "always cautioned us about guns, he taught us gun safety." He also related that his father "Never went hunting. He never used the shotgun." This witness testified at length as to his examination of the room where his dead sister was shot and of finding shotgun pellets in the wall. He told of their location and the physical facts about the room, the way the door to his father's room opened and the location of the furniture.

Dr. L. D. Boelsche, an M.D. in general practice for 30 years, who practiced in LaGrange, testified that he went to see the petitioner in jail on Monday, October 8, 1962. "I just went down there to talk to him at the request of his sister, and he was extremely nervous physically. I talked to him a little bit and left. He had some pain in his side, and agitated mentally, so I prescribed a tranquilizer for him. He was upset, nervous. I only saw him about 5 minutes."

The defense then rested its case.

Sheriff Flournoy took the stand in rebuttal and identified a jacket which had been laundered. The funeral home turned it over to him. He told of the holes in it and stated that it was in the same condition as it was when he first saw it on decedent's body. The sheriff testified that a picture taken by a defense witness and introduced in evidence by petitioner did not show a money bank and a picture of Rose Marie. The two items were on a table in the room where the girl was killed, and the money bank and picture were both shattered by the shot.

■ We have carefully re-stated the entire testimony in order to point out that the presence of these two state's witnesses, Sheriff Flournoy and Deputy Prilop, and the testimony adduced by them violated no basic guaranties of trial by jury in violation of the 14th or 6th amendments nor any trial procedure of this state. The petitioner was not deprived of any constitutional rights. We do not agree that their presence was of itself prejudicial to petitioner. Petitioner only testified to an "accident." The jury chose not to believe his version. If he unwittingly took the stand, put his wife on as a witness, put his sons on as witnesses in his behalf, it was the trial strategy determined by him and his two employed attorneys. He had a fair trial. In the jury's judgment he deserved the extreme penalty. We are not inclined to disturb their verdict.

Every contention raised by petitioner, both originally and in his motion for rehearing, has been examined with extreme care. We find no merit in his contention that Turner applies to his case. The two cases may easily be distinguished upon the facts.

The motion for rehearing is overruled.

WOODLEY, Judge (concurring).

The relief sought in this original application for writ of habeas corpus was properly denied. The evidence adduced at the hearing directed by this court and the findings of the trial judge are in the record and may be made available for use in the Federal post-conviction proceeding now pending.

I would overrule the motion for rehearing without written opinion.