Carl Junior **HACKATHORN**, Appellant,

v.

**J. E. (Bill) DECKER**, Appellee.

No. 23032.

United States Court of Appeals
Fifth Circuit.

Nov. 23, 1966.

Rehearing Denied Feb. 24, 1967.

Phil Burleson, Dallas, Tex., for appellant.

Henry Wade, Dist. Atty., Frank Watts, William F. Alexander, W. John Allison, Jr., Asst. Dist. Attys., Dallas, Tex., for appellee.

Before GEWIN and THORNBERRY, Circuit Judges, and WEST, District Judge.

WEST, District Judge:

Appellant, Carl Junior Hackathorn, a Texas state prisoner, appeals from an order of the United States District Court for the Northern District of Texas, denying his petition for a writ of habeas corpus. In his Specification of Errors he assigns five alleged errors as a basis for this appeal, i. e., that (1) the first of four confessions given by petitioner was obtained without his having been advised of his right to counsel; (2) he was denied due process in connection with proof of the voluntariness of his confessions; (3) the State's attorney suppressed evidence favorable to appellant; (4) his counsel was rendered ineffective by certain actions of the Court and the State's attorneys; and (5) he was denied a full evidentiary hearing and consideration of his evidence by the United States District Court for the Northern District of Texas.

On March 4, 1963, appellant shot and killed one Bobbie Smith in Dallas, Texas. He left Dallas in an automobile, and after being involved in an automobile accident, was arrested in Laredo, Texas, on the night of March 5, 1963. After receiving medical attention for minor injuries received in the automobile accident, appellant was taken to Laredo City Hall and Police Department at about midnight on March 5, 1963. He was apprised of the fact that he was being charged with murder and was advised that he did not have to make any statement, but that if he did, it could be used against him at his trial. At about 1:00 o'clock a.m. on March 6, 1963, within 45 minutes after his arrest, he gave a statement and signed it as a confession. Before giving the statement or signing it as a confession, he was specifically advised of his right to remain silent. He did not request, nor was he offered, the assistance of counsel. Subsequent to giving this confession, appellant gave three additional confessions, two of which were given in Laredo, Texas, during the morning of March 6, 1963, and the last of the four confessions was given in Dallas, Texas, on March 7, 1963. Before the last three confessions were given, appellant was advised of his right to counsel and again advised of his right to remain silent. He specifically waived his right to counsel and then gave the three confessions referred to. During his trial, Confessions Nos. 1, 2 and 4 were admitted in evidence, but Confession No. 3 was not used. During the trial, appellant's counsel freely admitted that Carl Junior Hackathorn shot and killed Bobbie Smith, and based his defense solely and entirely upon a plea of insanity. The jury heard the evidence, resolved the issue of insanity against appellant, found him guilty of murder, and assessed his penalty at death. The case was appealed to the Texas Court of Criminal Appeals, and writs to the United States Supreme Court were applied for and denied. Hackathorn v. Texas, 381 U.S. 930, 85 S.Ct. 1570, 14 L.Ed.2d 688. Thus, all available State Court remedies having been exhausted,

a petition for habeas corpus was filed in the United States District Court for the Northern District of Texas. After a full evidentiary hearing, that Court resolved the present issues against appellant, Hackathorn v. Decker, 243 F.Supp. 22 (1965), and this appeal followed. As to appellant's first contention, i. e., that his first confession was obtained without his having been advised of his right to counsel, and that this confession having been illegally obtained, all subsequent confessions are tainted with illegality, appellant relies entirely upon the holding in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). If *Escobedo* were to apply retroactively, there might be a serious problem raised by appellant's first contention. However, since this appeal was perfected, the *Escobedo* ruling has become subject to the holdings in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct 1772, 16 L.Ed.2d 882 (1966) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Johnson*, the United States Supreme Court held that the *Escobedo* decision is available only to persons whose trial began after June 22, 1964, and that the guidelines laid down in *Miranda* are available only to persons whose trials had not begun as of June 13, 1966. Since appellant was tried in May of 1963, long before *Escobedo*, neither *Escobedo* nor *Miranda* are applicable to his case. The evidence is clear that appellant was advised of his right to remain silent, and that he was advised of the fact that if he gave a statement, the statement would be used against him at his trial. The evidence is also clear that while he was not advised of his right to counsel, neither did he request the assistance of counsel. Prior to *Escobedo*, the law in Texas was clear. There was no requirement, absent a request for counsel, that an accused be advised of his right to counsel. McDonald v. State, 395 S.W.2d 48 (Tex.Cr.App.1965); Hinkley v. State, 389 S.W.2d 667 (Tex.Cr. App.1965); Corry v. State, 390 S.W. 2d 763 (Tex.Cr.App.1965). Since his trial took place before the decisions in

*Escobedo* and *Miranda*, failure of the police to inform him of his right to counsel during interrogation does not support his claim to a writ of habeas corpus. Johnson v. State of New Jersey, supra; Harris v. Beto, 367 F.2d 567 (C.A. 5, Oct. 1966). At the time this first confession was offered in evidence, counsel for appellant conducted a lengthy voir dire examination, out of the presence of the jury, concerning the manner in which the statement was obtained. It is abundantly clear from this testimony that nothing was done by the officers who participated, or by anyone else, that could in any way be considered to have violated the constitutional rights, as they existed at that time, of the appellant. Thus, we find no merit to appellant's first contention.

■ Passing for a moment his second contention concerning the voluntariness of the confession, we turn to his third ground for appeal, i. e., that certain evidence favorable to the appellant was improperly suppressed by the State. It is the contention of appellent that one of his confessions, previously referred to as Confession No. 3, was not admitted in evidence at the time of his trial, and was not produced for his inspection prior to trial when requested. He now urges that this amounted to suppression of evidence that would have been helpful to appellant. He states that in this particular confession appellant made the statement that he did not know why he shot the deceased. Counsel argues that because of the fact that the State's theory was that the murder was committed to effect robbery and auto theft, this statement of appellant that he did not know why he shot the deceased would have inured to his benefit. Counsel for appellant states that he had requested a copy of this confession for his inspection prior to trial, but that his request had been denied. However, it is the law of Texas that neither the accused, nor his attorney, is entitled to pre-trial inspection of the defendant's confession. Smith v. State, 156 Tex.Cr.R. 253, 240 S.W.2d 783 (1951); Lopez v. State, 158

Tex.Cr.R. 16, 252 S.W.2d 701 (1952). We find nothing unconstitutional about this Texas rule of law. Furthermore, the record shows that during the trial of the case, counsel for the State did attempt to introduce this confession into evidence and the introduction of it was objected to by counsel for the appellant, and his objection was sustained. Thereafter, on the hearing of appellant's motion for a new trial, this confession was presented to the Trial Court, placed in a sealed envelope, and forwarded with the record on appeal to the Texas Court of Criminal Appeals, which Court decided that under Texas law, there had been no illegal suppression of evidence. Thereafter, this confession was introduced in evidence at the habeas corpus hearing in the United States District Court, which Court also found that there had been no illegal suppression of evidence. Actually, the statement contained in this confession which appellant allegedly made concerning the fact that he did not know why he shot the deceased was known to appellant's counsel during the trial of the case and was made a part of the record. The psychiatrist who testified on behalf of appellant testified during the trial that the appellant had told him that he did not know why he shot the deceased. Consequently, the portion of the confession which appellant now contends would have inured to his benefit was actually in evidence through the testimony of the psychiatrist, Dr. Robert S. Glenn. We are satisfied that this record shows no indication of any illegal suppression of evidence by the State in this case.

█ Appellant's fourth and fifth contentions are that his attorneys were rendered ineffective by actions of the Court and the State's attorneys, and that he, appellant, was denied a full evidentiary hearing and consideration of his evidence in the United States District Court for the Northern District of Texas. Nothing would be gained by detailing all of the voluminous evidence in this record which shows conclusively that there is simply no merit to these contentions. Appellant is and has been represented by extremely able counsel who has, from the beginning of these proceedings, diligently protected every right to which appellant is entitled. We find no evidence of any kind that any act of either the Trial Court or the State's attorneys has in any way rendered appellant's counsel ineffective, and the record of the Federal habeas corpus hearing presented to this Court is ample evidence of the fullness of the evidentiary hearing held in the United States District Court for the Northern District of Texas.

And now, returning to appellant's second specification of error, i. e., that he was denied due process of law in connection with testing the voluntariness of his confessions, appellant relies entirely on the case of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) for support of this contention. Appellant argues that under the Texas procedure used during his trial, he was denied the opportunity, as required by *Denno,* to have the voluntariness of his confessions heard and decided without regard to their truth or falsity. Jackson v. Denno concerned itself with the New York rule for determining voluntariness of confessions, but in the course of the decision, the Court discussed the so-called Orthodox rule and the Massachusetts rule, and laid down certain guidelines which it considered necessary to follow in protecting a defendant's right to have the voluntariness of his confession properly passed upon. Under the New York rule, the trial judge makes a preliminary determination, and only excludes the confession if under no circumstances could the confession be deemed to have been voluntarily given. If evidence presented on the question of voluntariness presents a fair question as to whether or not the confession was voluntarily given, it is then left to the jury to determine both the voluntariness of the confession and its truthfulness. But because the jury only returns a verdict as to guilt or innocence, the defendant never knows whether they deemed his confession to have been voluntarily given or not. It **is**

speculative after the trial whether the jury concluded that the confession was voluntary and based a conviction on it, or whether they concluded that it was both involuntary and unimportant. *Denno* held that this procedure was unconstitutional because it denied the defendant a right to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined. But the Court did not find the same objection to either the Orthodox rule or the Massachusetts rule. Under the Orthodox rule the judge himself solely and finally determines the question of voluntariness. The defendant has an absolute answer, aside from the question of his guilt or innocence, and aside from the question of the truth or falsity of the confession, to the question of voluntariness of his confession. This procedure, said the United States Supreme Court in *Denno,* is obviously valid. Under the Massachusetts rule, the judge hears evidence himself as to voluntariness alone, and if he concludes that the confession was involuntarily given, he excludes it from evidence. If he decides it was a voluntary confession, he then gives it to the jury who may, if they wish, disagree with him and find it involuntary and thus ignore it. This procedure, said the Supreme Court, is also valid. If the judge finds it involuntary, the defendant obviously knows it, for the confession is then excluded from the evidence. And if the judge finds it voluntary, even though the defendant does not know exactly what the jury thought of it, nevertheless, the defendant has had a separate, independent hearing on the question of voluntariness, and the outcome of that hearing, as decided by the judge, is a matter of record for later review. This procedure obviously differs from the New York rule considered in *Denno* in that under the New York rule, the judge does not determine voluntariness. He only decides whether or not a fair question of voluntariness exists. If it does, it is then left entirely up to the jury alone to determine that issue and how

they decide it is not a matter of record and is never known to the defendant or to any appellate court. Under that rule, the judge is not permitted to resolve conflicting evidence or arrive at his own independant appraisal of the question of voluntariness of a confession, but he must, instead, leave the determination of that question entirely up to the jury, whose verdict on that question is not a part of the record and is thus never known. In *Denno,* the Court rejected the New York procedure on still another ground. By giving a confession to the jury to determine its voluntariness, the jury has necessarily heard or read the confession and is thus in a position to judge its truth or falsity whether or not it is finally determined to have been voluntarily given. And of course, even though a confession be true, it must nevertheless be excluded from evidence if it were involuntarily given. Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). The Court recognized the fact that it would be impossible to conclude that, after hearing a confession they deemed to state the truth, the jury could ignore it completely simply because they concluded it had been involuntarily given. There is just too much danger that, if the jury had doubts about the sufficiency of the other evidence they might consciously or unconsciously lean upon a confession they deemed to be true even though involuntarily given.

With these principles and guidelines in mind, we must look at the procedure followed in Texas at the time of appellant's trial. The question of which rule of law for determining voluntariness of confessions was used in Texas at that time was considered in Smith v. State of Texas, 236 F.Supp. 857 (D.C.1965) wherein the Court said:

"Texas Courts have had no occasion to categorize or label its procedure for determining the voluntariness of a confession. It would appear that the Wigmore or Orthodox procedure is not used or recognized in Texas. Without labeling the Texas procedure as

the equivalent of either the New York or Massachusetts procedures (as such are labeled in Jackson), an examination of the pertinent Texas cases reveals that it is within the discretion of the trial judge to determine which of these two procedures he will follow. This discretion was clearly recognized by the Court of Criminal Appeals of Texas in Wheatley v. State, 117 Tex.Cr.R. 599, 34 S.W.2d 876 (1931). Moreover, this discretion, or at least the absence of any prevailing policy in Texas requiring the application of the New York procedure by the trial court, was evident from the recent opinion of Judge Ben C. Connally in Crow v. Beto, 237 F.Supp. 19 (S.D.Tex.1964)."

■ Since Texas courts do not follow the Orthodox rule, and are not bound by either the so-called New York or Massachusetts rules, the question is whether or not the procedure used by the trial judge in *this* case was unconstitutional in light of *Denno*. Our answer to that question is in the negative. The evidence clearly shows that the defendant had every opportunity to have the voluntariness of his confessions actually and reliably determined out of the presence of the jury and to have that determination made a part of the record. No objections were made during the trial of this case concerning the procedure used to test the voluntariness of the confessions, and there is no evidence to support a claim that the appellant was in any way restricted in his proofs. With reference to the first confession, the officer who took it testified on his examination in chief in the presence of the jury. This testimony was not objected to by counsel for appellant, and the officer merely outlined the procedure used before and during the taking of the confession. After this testimony was in, defense counsel requested permission to take the witness on voir dire, out of the presence of the jury, so that he might question him further about the voluntariness of the confession. The jury was retired, and a very comprehensive and extensive voir dire examination was then conducted. At the conclusion of this testimony, the introduction of the confession was objected to only on the ground that the statement did not show that the defendant had read and comprehended what was in it. This objection was overruled by the Court, and the jury was then returned to the courtroom, after which the statement was read to them. When the State attempted to introduce the second confession, Mr. Burleson, one of appellant's attorneys, said "I hate to ask the jury to go out again, but I think we have a question of legality on this that should be asked on voir dire examination." Whereupon Mr. Power, appellant's other counsel, said: "I think we can ask this question without the jury going out." The Court then stated: "It is up to you. I will retire them if you want to." But Mr. Burleson replied: "There is only about two questions, and we will let the court rule on it." The voir dire examination was then conducted, and Mr. Burleson stated: "All right, we would like one objection here to keep the jury from going out; may we do it at the bench?" The Court said: "Yes, if you desire to do so." The record then shows that at the bench, out of the hearing of the jury, Mr. Power objected only to the portion of the statement wherein the defendant said he took some things out of the deceased's home, because "that would show extraneous offenses." The objection was overruled and the statement was then read to the jury. The first mention that was made of the third confession, the one which appellant now contends was illegally suppressed by the State, was made in the presence of the jury by defense counsel. When this reference to the confession was made before the jury, the attorney for the State immediately offered to introduce it in evidence, whereupon an objection was made by counsel for appellant. The objection was sustained, and no further mention was made of that confession during the State Court trial. Appellant's fourth confession, the one taken on March 7, 1963, was introduced

into evidence by the State after a brief examination, before the jury, of the officer who took the statement. No objection was made to this introduction, and no voir dire examination was either requested or conducted by defense counsel. The officer who took the statement was cross-examined at length by defense counsel, and no request was made to retire the jury.

Actually, as in the *Smith* case, the judge here did not categorically state that the confessions were voluntarily given, but the record leaves no doubt that he did, in fact, find from the evidence presented to him on that issue that the confessions were voluntarily given when he overruled defendant's motion to exclude them from evidence. Since the main thrust of appellant's argument against the validity of the confessions was directed at his mental capacity at the time he gave them, the trial judge clearly and correctly charged the jury with reference to one's mental capacity voluntarily to give a confession. On this point he instructed the jury as follows:

"You are further charged that in all prosecutions of felonious homicide the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining its verdict.

"You are instructed that the law provides that no act done in a state of insanity can be punished as an offense, and no person who becomes insane after he commits an offense shall be tried for the same while in such condition. * * * As to his mental condition at the time, with reference to the offense charged, it is peculiarly a question of fact to be decided by you from all the evidence in the case, before, at the time of, and after the act, if any. * * * You are further instructed that in order for the defendant to have been able to have made a confession or confessions, if any he made, the defendant must have been possessed of sufficient mentality at the time to have known what he was doing and the nature and effect of his acts in making a confession or confessions, if any. Now, if you believe from the evidence, or have a reasonable doubt thereof, that the defendant at the time he made any confession or confessions, if any, did not know what he was doing, or did not know and realize the nature and effect of his act or acts, if any, at the time of making any confession or confessions, if any, then you are instructed that you will disregard any such confession or confessions, if any, and consider the same, if any, for no purpose."

From a review of this record, it appears that the Trial Court followed generally the procedure referred to in *Denno* as the Massachusetts rule. The Court, after hearing evidence on the subject, concluded that the confessions were voluntarily given, and that the defendant had the mental capacity to give them, and hence ruled that they were admissible. Then, by its charge concerning the question of the mental capacity of the appellant to give a confession, it authorized the jury to disregard the findings and conclusions of the Court as to competency if they concluded that appellant, at the time he gave the statements, lacked the mental competency required to give a voluntary confession. With the issue thus framed, the jury found adversely to the appellant and we see no constitutional violation involved. The procedure followed does no violence to the teaching of *Denno*. Appellant had every opportunity to present to the Court, either in the presence of or out of the presence of the jury, the issue of voluntariness separate and apart from the question of truth or falsity of the confession. Defense counsel availed himself of that opportunity to the extent deemed by him advisable at the time.

No objections were made to the procedures followed, and indeed, none were indicated. Appellant's only objections were leveled at the Court's conclusion that the confessions were voluntarily given. Upon a review of the evidence, we cannot say that the conclusion reached by the trial judge was in error. Appellant's constitutional right to due process of law, as delineated in Jackson v. Denno, supra, was amply protected under the procedure used by the Texas court in this case.

Having considered all of appellant's contentions, and having found them without merit, the judgment of the District Court, denying appellant's application for a writ of habeas corpus, is

Affirmed.