**STATE OF TEXAS and Dr. George J. Beto, Appellants,**

v.

**James Edward GRAVES, Appellee.**

**No. 23100.**

United States Court of Appeals
Fifth Circuit.

July 14, 1967.

Rehearing Denied Sept. 7, 1967.

---

See also, 5 Cir., 352 F.2d 514.

Sam R. Wilson, Asst. Atty. Gen. of Texas, Houston, Tex., Lonny F. Zwiener, Asst. Atty. Gen., Waggoner Carr, Atty. Gen., Hawthorne Phillips, First Asst. Atty. Gen., T. B. Wright, Exec. Asst. Atty. Gen., Howard M. Fender, Asst. Atty. Gen., Austin, Tex., for appellants.

J. S. Bailey, Jr., J. Charles Whitfield, Jr., Peter S. Navarro, Jr., Houston, Tex., for appellee.

Before HUTCHESON and DYER, Circuit Judges, and SPEARS, District Judge.

HUTCHESON, Circuit Judge:

Tried in a Texas state court for murder with malice, Graves was convicted by jury verdict and sentenced to death. The conviction was affirmed on direct appeal,[1] but Graves was successful in obtaining a writ of habeas corpus from the court below. The grant of the writ was based on two grounds: that Graves was denied the effective assistance of counsel under the precepts of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); and that the procedure used by the state trial judge to determine the voluntariness and admissibility of Graves' confession did not comply with the standards set forth in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Because we disagree with the district court on both points and conclude that neither has merit, we reverse.

Graves was arrested for the murder of a motel manager which had occurred in the course of an attempted armed rob-

1. Graves v. State, 382 S.W.2d 486 (Tex. Crim.App.1964), cert. denied, 380 U.S. 967, 85 S.Ct. 1114, 14 L.Ed.2d 157 (1965).

bery. The arrest was made at Graves' residence by Houston police officers on November 15, 1962, at about 9:50 p. m. No contention is raised concerning the legality of the arrest, which was executed without a warrant upon information from an accomplice.[2] While in custody and after interrogation, Graves signed a statement which describes the circumstances under which the victim was shot while attempting to resist the robbery. Graves says that he gave the confession at 2 a. m. on November 16, about 4 hours after his arrest. Police officers testified that he confessed much sooner than that.

With regard to the *Escobedo* contention, it is undisputed that the confession was made without Graves having been advised by an attorney and without having been informed by police of his right to counsel. Graves claims that he requested counsel, which is denied by the police. The district court did not resolve that factual question but instead relied on Collins v. Beto, 348 F.2d 823 (5th Cir. 1965), to hold that, in any event, a request for counsel was not required to effectuate the holding of *Escobedo*. The court concluded that Graves was denied his constitutional right to the assistance of counsel at a critical stage of the prosecution because he was not affirmatively informed of his right to consult with an attorney. We may quickly dispose of this point because subsequent to the habeas hearing below, the Supreme Court held that *Escobedo* will not be applied retroactively. It therefore does not govern the case at bar since Graves' trial commenced on June 24, 1963, which was prior to the date of the *Escobedo* decision. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). It should be noted, however, that while *Escobedo* provided new safeguards against the use of unreliable statements at trial, its nonretroactivity does not preclude persons, like Graves, whose trials were already completed, "from invoking the same safeguards as part of an involuntariness claim." Id. at 730, 86 S.Ct. at 1779. See also Davis v. State of North Carolina, 384 U.S. 737, 740, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).

For an understanding of our disposition of the claim based on Jackson v. Denno, it is desirable to set out the substance of the confession and in some detail the manner by which the voluntariness of the confession was determined. The confession states that Graves and an unidentified man went into a motel for the purpose of committing robbery; that Graves walked inside, pulled a pistol from his waistband and demanded that the manager put the money in a sack; that the manager pulled out a club and hit Graves in the palm of his raised hand; that Graves then shot the manager four or five times, ran to the car, and later threw the gun in a bayou. As an afterthought, it was added that Graves had lost some items in the scuffle at the motel, a plain felt hat and some black sun glasses.

When the State offered Graves' statement as evidence at the trial, the defense attorney asked that the jury be removed so that the officer who took the statement could be questioned out of the jury's presence. The jury was removed, and a preliminary hearing with regard to the confession's admissibility was held.

The defense attempted to establish that the officer had included in the statement information in addition to that which was supplied by Graves. This suggestion was denied by the officer. The defense then objected to the introduction of the statement on the ground that "it wasn't voluntarily made, and [that the officer] wrote this situation to fit his own phraseology."

Graves then testified to support his objection to the introduction of the statement. His testimony adduced on direct examination is set out in the margin in

2. See the companion case, Procella v. State, 395 S.W.2d 637 (Tex.Crim.App.1965).

its entirety.[3] He stated that he did not make the statement voluntarily, but all that he complained of was that the statement was not factually accurate in a few particulars. He testified that he had told the officer taking the statement that the manager had hit him on the head, not in the palm of the hand, and he denied having said that he had lost a hat or glasses.

However, on cross-examination Graves conceded that he had lost a hat and perhaps some glasses at the motel but yet insisted that those in the possession of the police were not the ones he had lost. The State was not limited on cross-examination to the voluntariness issue but was permitted to question Graves for all purposes. It then proceeded to examine Graves closely as to the other details contained in the statement, all of which he admitted. At the end of the cross-examination the defense reiterated the objection to the statement on the ground that Graves "denies the stuff he didn't put in there." The trial judge overruled the objection.

Graves did not return to the stand when the jury was recalled. Thus the jury did not hear any testimony by him that the statement contained details which he had not admitted, nor did he offer any evidence before the jury on the question of voluntariness. No assertion was made as part of an involuntariness claim that Graves allegedly had requested, but had been denied, the right to see a lawyer; nor is it made here. His sole defense was insanity, and the jury was not instructed on the issue of voluntariness.

Following affirmance of the conviction, Graves applied to the Texas Court of Criminal Appeals for habeas corpus. That court requested from the state trial judge a certification of his finding on the voluntariness of the confession. The judge certified that he had found the confession to have been given voluntarily. Based on that certification the Texas Court of Criminal Appeals denied the writ.[4]

Having exhausted state remedies, Graves petitioned for habeas corpus in the court below. The district court conducted an evidentiary hearing at which testimony was taken with regard to the several contentions raised by Graves.[5] The state trial judge was called to testify concerning the method he had used to

---

3. Q: James, you can read, can't you?
   A: Yes sir.
   Q: I want you to take a look at that statement the officer testified to and said you voluntarily made that statement. Will you take it? Look at it and tell me whether you made that statement they allege to be a voluntary statement.
   A: No sir, I didn't make it voluntarily.
   Q: Did you read it in its entirety? Let me ask you, did you tell anyone that this man hit you in the palm of the hand?
   A: No sir.
   Q: What did you tell him?
   A: I said he hit me on the head.
   Q: You didn't say he hit you in the hand but over the head?
   A: Yes sir.
   Q: You heard him testify these two men were in the office when he took that statement. Is that true?
   A: Not while he was taking the statement, no sir.

   Q: You didn't make that statement as he has it written?
   A: Not all of it, no sir.
   Q: Did you tell him anything about that you lost a hat there or lost any glasses?
   A: No sir.
   MR. BAILEY: That's all we have.

4. See Ex parte Bertsch, 395 S.W.2d 620 (Tex.Crim.App.1965), for another example of an after-the-trial certification by a state trial judge as to his finding on the voluntariness issue.

5. In addition to the two which we have discussed, Graves raised questions concerning (a) the prospective jurors having been qualified on the death penalty, (b) the alleged suppression of evidence that a cell mate thought Graves was "crazy", (c) an alleged threat by the police that Graves would be killed if he did not confess, and (d) the purported existence of inflammatory publicity. The district court found that none of these contentions had merit, and no issue is raised on appeal with regard to that finding.

determine the admissibility of the confession. He stated that before passing upon its admissibility he had considered the circumstances under which it was obtained. He had decided that it was voluntarily given. Otherwise, he said, he would not have admitted it.[6]

The court below held that it was an insufficient determination of the voluntariness of the confession for the trial judge merely to have overruled the objection to its introduction without having made a specific finding that the confession was voluntary. We cannot agree.

■ In Jackson v. Denno, the Supreme Court held unconstitutional the procedure employed in New York for determining the admissibility of a confession. Under the New York rule, if the evidence presents a fair question as to the voluntariness of the confession, the trial judge must receive the confession and leave the determination of its voluntariness to the jury; only if in no circumstances could it be deemed voluntary is it excluded by the judge. It was held that this procedure conflicts with the accepted principle that an accused is deprived of due process of law if his conviction is founded in whole or in part upon an involuntary confession, even though it is true, Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961), and even though there is ample evidence aside from the confession to support the conviction, Payne v. State of Arkansas, 356 U.S. 560, 568, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958). The Court said that the New York procedure "poses substantial threats to a defendant's constitutional rights to have an involuntary confession entirely disregarded and to have the coercion issue fairly and reliably determined." 378 U.S. at 389, 84 S.Ct. at 1787. The Court formulated the rule that before a confession may be considered by the convicting jury, there must be a "reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which voluntariness may depend." [7] 378 U.S. at 391, 84 S.Ct. at 1788.

Two procedures approved by the Court were the so-called Orthodox rule, under which the judge himself solely and finally determines the voluntariness of the confession, and the so-called Massachusetts rule, under which the jury passes on voluntariness only after the judge has fully and independently resolved the issue against the accused. These rules are acceptable because under them "the judge's conclusions are clearly evident from the record since he either admits the confession into evidence if it is voluntary or rejects it if involuntary." 378 U.S. at 378–379, 84 S.Ct. at 1782.

At the time of Graves' trial, Texas apparently did not follow uniformly and consistently any single procedure to determine the voluntariness of a confes-

---

6. The state trial judge testified as follows in the evidentiary hearing in the district court:

"I accepted it as being a free and voluntary confession and was admissible, * * * and that was my reason for admitting it, whether I so stated or not. Those were the reasons; *otherwise, it would not have been admitted.*" (emphasis added)

He further stated: "I had determined that it was admissible and before it could have been admissible, it would have had to be free and voluntary, and, therefore, that is what I held by overruling the objection."

7. This rule applies retroactively to the case at bar. In Johnson v. State of New Jersey, 384 U.S. 719, 727, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), Jackson v. Denno was listed as one of the instances in which it had been "concluded that retroactive application was justified because the rule affected 'the very integrity of the fact-finding process' and averted 'the clear danger of convicting the innocent.' Linkletter v. Walker, 381 U.S. 618 at 639, 85 S.Ct. 1731, at 1734, 14 L.Ed.2d 601; Tehan v. Shott, 382 U.S. 406, at 416, 86 S.Ct. 459, 15 L.Ed.2d 453." The Court further stated that "[w]e gave retroactive effect to Jackson v. Denno, supra, because confessions are likely to be highly persuasive with a jury, and if coerced they may well be untrustworthy by their very nature." Id. at 729, 86 S.Ct. at 1778. See Burns v. Beto, 371 F.2d 598, 603 n. 2 (5th Cir. 1966).

sion.[8] Although the condemned New York rule sometimes has been applied by Texas courts,[9] the majority opinion in Jackson v. Denno listed Texas as one of those jurisdictions where it appeared unclear from appellate court opinions which procedure was used. See 378 U.S. at 378 n. 9, 84 S.Ct. at 1782 and the Appendix to the Opinion of the Court, 378 U.S. 399, 84 S.Ct. 1792.[10] In the absence of a prevailing rule, we must consider the particular procedure used by the trial judge in the instant case and adjudge whether it was unconstitutional in light of the Jackson v. Denno principle. Hackathorn v. Decker, 369 F.2d 150, 155 (5th Cir. 1966).

■ We note that in the preliminary hearing outside the presence of the jury, Graves was permitted to present without limitation evidence in support of his involuntariness claim. He did not, however, offer evidence tending to show that the confession was coerced. He asserted neither physical nor psychological coercion in any form. Instead, he insisted merely that the statement included a few minute details which purportedly he had not given to the police. This is not really support for a claim that the statement is involuntary as the product of coercion. It more closely resembles an assertion that the statement is not completely accurate, while admitting that in the main it is correct. Since none of the matters complained of would, if proved, add any support to a claim that the confession was coerced, we think it doubtful that a fact question was presented with respect to whether the confession is voluntary. This may explain why the jury was not instructed on voluntariness, a matter about which Graves does not complain

here. Nevertheless, we have considered the procedure used to determine the voluntariness of Graves' confession and have concluded that it did conform to due process standards.

The record shows that the trial judge overruled the objection to the introduction of the confession after hearing all the evidence going to the issue of voluntariness. In his certification to the Texas Court of Criminal Appeals, he stated that before allowing the confession in evidence he had determined it was voluntary. Again in the hearing in the court below he testified that whether he said so at the time or not, he had made an independent determination in his own mind that the confession was voluntary; otherwise, he would not have admitted it. He declared that this reasoning process was signified by the overruling of the objection.

Jackson v. Denno does not require more. There the Court was primarily concerned that the issue of voluntariness be determined independently of the issue of guilt. Hence, a determination by the trial judge that the confession is voluntary normally would seem to be sufficient. Indeed, the Court recently has so indicated: "Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." Sims v. State of Georgia, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967).

■ We have no doubt that the record plainly shows that the judge made an independent determination that the confession was voluntary prior to admitting

---

8. Compare Marrufo v. State, 172 Tex. Crim. 398, 357 S.W.2d 761 (1962); Odis v. State, 171 Tex.Crim. 107, 345 S.W.2d 529 (1961), *with* Bingham v. State, 97 Tex.Crim. 594, 262 S.W. 747 (1924).

9. See, e.g., Lopez v. State, 366 S.W.2d 587 (Tex.Crim.App.1963), vacated and remanded 378 U.S. 567, 84 S.Ct. 1924, 12 L.Ed.2d 1038 (1964) (per curiam). On remand, the Texas Court of Criminal

Appeals did formulate a procedure thereafter to be applied uniformly in Texas courts. Lopez v. State, 384 S.W.2d 345 (Tex.Crim.App.1964), noted in 43 Texas L.Rev. 396 (1965).

10. Justice Black, on the other hand, listed Texas as following the New York rule. 378 U.S. at 417, 84 S.Ct. 1774. Cf. Burns v. Beto, supra, 371 F.2d at 603.

it into evidence.[11]   It was unnecessary for him to have made a further specific formal finding to the same effect.   We previously observed that Graves failed to produce evidence raising disputed facts whose resolution might control the voluntariness question.   The procedure used at trial afforded Graves all that which he was entitled to receive in accordance with due process of law.

The judgment of the district court granting habeas corpus is reversed.

11.  In Hackathorn v. Decker, supra, we approved a procedure quite similar to the one employed here.  It was there stated: "Actually, * * * the judge here did not categorically state that the confessions were voluntarily given, but the rec- ord leaves no doubt that he did, in fact, find from the evidence presented to him on that issue that the confessions were voluntarily given when he overruled defendant's motion to exclude them from evidence."   369 F.2d 156.