Johnny R. MARTINEZ,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.

No. 78–2923.

United States Court of Appeals, Fifth Circuit.

Feb. 20, 1980.

Richard J. Jauma, Staff Counsel for Inmates, Texas Dept. of Corr., Huntsville, Tex., for respondent-appellee.

R. E. Drewett, Asst. Atty. Gen., Austin, Tex., for petitioner-appellant.

Before SIMPSON, TJOFLAT and HILL, Circuit Judges.

SIMPSON, Circuit Judge:

Johnny R. Martinez was convicted of possession of heroin in a Texas state court. His sentence was set, as Texas law required, at life imprisonment because of his two prior felony convictions. Tex. Penal Code Ann. art. 63 (1962) (repealed and recodified as Tex. Penal Code Ann. § 12.42(d)). Martinez asserted in his habeas corpus petition to the federal district court[1] that one of the prior felony convictions is void because a confession was admitted as evidence without a reliable determination of its voluntariness as required by the Supreme Court in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). He urges on appeal, as he did below, that the Texas statute requiring life imprisonment upon the third felony conviction was therefore erroneously applied. Tex. Penal Code Ann. art. 63 (1962). The district court held that although the *Jackson v. Denno* requirements for determination of voluntariness were not met, petitioner had failed to allege facts which would "show that his version of the events, if true, would require the conclusion that his confession was involuntary." *Procunier v. Atchley*, 400 U.S. 446, 551, 91 S.Ct. 485, 488, 27 L.Ed.2d 524 (1971). The petition was denied. We reverse because petitioner's version of the events relating to the confession, if true, demonstrates that the confession was not voluntarily made.

*The Procedural History*

In 1962 Martinez was convicted by a Texas jury of robbery by assault; Judge Mace B. Thurman, Jr. presided over the trial. Four years later he was convicted of passing a forged instrument, with Judge Thur-

---

1. Martinez did not seek state habeas relief. The district court correctly held that his direct appeal of the drug conviction, for which he was sentenced to life imprisonment, complied with the "adequate exhaustion" requirement of 28 U.S.C. § 2254. *See Brown v. Allen*, 344 U.S. 443, 447–48, 73 S.Ct. 397, 402, 97 L.Ed. 469 (1953), *Bacom v. Sullivan*, 194 F.2d 166 (5th Cir. 1952), and *Bacom v. Sullivan*, 181 F.2d 177 (5th Cir. 1950).

man again the presiding judge. His possession of heroin conviction followed in 1969. He filed a motion seeking a new trial because the presiding judge (Judge Blackwell) had participated as a member of the prosecution in one of his previous felony convictions. The motion was granted. After reindictment on the same charges Martinez again found himself in Judge Thurman's court. A jury found him guilty of possession of heroin. Because of the two prior felony convictions, Judge Thurman sentenced Martinez to life imprisonment as mandated by the Texas statute.

Martinez appealed to the state appellate court, alleging, among other grounds, that the prior robbery conviction was void because the trial judge in the 1962 robbery trial did not make an independent determination of the voluntariness of the written confession introduced by the State against him. If the confession was not voluntarily given the robbery conviction is void. A void conviction may not be used to enhance an individual's sentence under the Texas statute. *Burgett v. State of Texas*, 389 U.S. 109, 112–13, 88 S.Ct. 258, 260–61, 19 L.Ed.2d 319 (1967). Judge Thurman, the presiding judge at the robbery trial, filed a certification with the state appellate court indicating that he had determined the voluntariness of Martinez's confession before allowing it into evidence.[2] The Texas Court of Criminal Appeals affirmed the conviction and the life sentence with a cryptic reference to the voluntariness issue.[3] By his federal habeas petition Martinez sought relief on two grounds: (1) that the life sentence was improperly based on a void conviction, and (2) that he was denied due process because he received a harsher sentence upon retrial of the possession charge. The district court granted relief on the second ground. We reversed. *Martinez v. Estelle*, 527 F.2d 1330 (5th Cir. 1976), *cert. denied*, 429 U.S. 924, 97 S.Ct. 325, 50 L.Ed.2d 292.

Petitioner returned to the district court to challenge the constitutional validity of the 1962 robbery conviction and the life sentence which depended upon the conviction. The district court found that the requirements of *Jackson v. Denno* were not met. Record, vol. 1 at 29–34. Judge Thurman's certification of voluntariness was not given "much weight", even though this court placed "some reliance" on a similar certification in *State of Texas v. Graves*, 380 F.2d 676, 680 (5th Cir. 1967). Record, vol. 1 at 32. Instead the district court relied on *Smith v. State of Texas*, 395 F.2d 958 (5th Cir. 1968), wherein the court held that the live testimony of the state trial judge, that he had determined voluntariness, did not in those circumstances satisfy *Jackson v. Denno*. However, habeas relief was denied because Martinez failed to "show that his version of the events, if true, would require the conclusion that his confession was involuntary." Record, vol. 1 at

---

2. Judge Thurman's certification to the Texas Court of Criminal Appeals follows:

> On February 8, 1962, (cause # 33,291), as Presiding Judge of the 147th Judicial District Court of Austin, Travis County, Texas, after a jury had found the Appellant in this cause guilty of robbery by assault, I sentenced Appellant to five (5) years in the Texas Department of Corrections. During this trial, Appellant's confession was admitted into evidence. It is respectfully urged that this instrument be considered as a certification of the voluntariness of that confession. I hereby certify that I found initially as a matter of law that the confession was voluntarily made and that I further resolved, determined and decided conflicting and disputed issues of fact, and found beyond a reasonable doubt, without regard to the truth or falsity of the confession, that the confession was freely and voluntarily made. *Ex parte Bertsch*, Tex.Cr.App., 395 S.W.2d 620.

> Further, I resolved any doubt in my own mind as to the voluntariness of this confession. This is one of the fields in which the trial court has a right to make a finding as to any disputed issue, and I believe I fully understood and carried out my responsibility under the law. *Smith v. State of Texas*, 236 F.Supp. 857 (1965) and *Wheatley v. State*, 117 Tex.Cr.R. 876, 34 S.W.2d 876.

Record, vol. 2 at 43.

3. *Martinez v. State*, 471 S.W.2d 399 (Tex.Cr. App.1971). The court stated that "[h]e neither alleges nor contends that the confession was involuntarily given nor does he allege any facts which would establish the involuntariness of the confession." *d.* at 400–01.

32, *quoting Procunier v. Atchley, supra,* 400 U.S. at 451, 91 S.Ct. at 488.

### The 1962 Robbery Conviction

The evidence at petitioner's 1962 robbery trial was to the effect that the twenty year old Martinez, accompanied by four other youths, drove his parents' car to a grocery store in Austin, Texas. He parked nearby and remained in the vehicle while the others went into the store. One remained outside as a sentry; the others entered and demanded twenty dollars from the cashier, claiming the store manager had told them to pick it up. The cashier refused. One youth then threatened the cashier with a knife while another held his arms. The money was taken from the cash register. Almost simultaneously the owner arrived with pistol in hand. The sentry alerted his comrades and all fled as the owner fired three shots in the air. The sentry jumped into the car with Martinez and it sped away. The remaining three youths fled on foot, but Martinez picked one up several blocks from the scene. They then drove to a local dance. Later that evening Martinez saw a policeman waiting by the car, so he left and returned for the car some time later.

Eventually petitioner was picked up and questioned concerning the robbery. The investigating policeman testified that Martinez readily gave a verbal statement concerning his participation in the robbery, but was reluctant to sign a written confession. Martinez was taken to the assistant district attorney's office where, after approximately twenty minutes, he agreed to sign a statement. A typewritten confession was prepared and given to Martinez to read. After taking an oath, Martinez signed the statement. Record, vol. 2 at 492.

Before the confession was read into evidence the defense attorney questioned the policeman about the events leading to the confession. The officer testified that no coercion was used and that Martinez had only been told that giving the statement was "the proper thing to do." The defense counsel objected to introduction of the confession on the grounds that it was not vol-

untary. The trial judge responded: "I don't think the state has proved the elements of it yet. I don't think you have proved the elements of the confession yet for me to rule on it." Record, vol. 2 at 379. After the state established several additional facts the objection was overruled and the confession was read to the jury.

When the prosecution rested and *after* it read the confession in evidence Martinez was called as a witness on his own behalf. Although he did not deny his presence and participation at the scene of the robbery, he claimed that he merely drove the other four youths to the grocery store so they could "collect" some money the manager owed one of them. He denied having any knowledge of the planning or execution of the robbery. He said that he sped away only because he heard shots and was understandably afraid, not because he was guilty.

According to Martinez, he signed the confession because the assistant district attorney and the police started talking to him about his wife and children and said the judge might go easier on him if he signed a statement. He further testified that the written confession did not accurately reflect what he told the police. Martinez's version did not include the necessary element of scienter. He claims he signed the statement unaware of its contents because he is illiterate in the English language. He purportedly demonstrated his illiteracy by unsuccessfully attempting to read the confession aloud at trial. Martinez has completed the eighth grade and the investigating officer testified that Martinez said he could read English.

After presentation of all the evidence, the trial judge submitted the issue of voluntariness to the jury, instructing them to disregard it if they determined it was not voluntarily given.

### The Law of Voluntariness of Confessions

We begin with the basic proposition that an accused is deprived of due process if his conviction rests wholly or partially upon an involuntary confession, *Lego v. Twomey,* 404 U.S. 477, 483, 92 S.Ct.

619, 623–24, 30 L.Ed.2d 618 (1972), even if the statement is true, *Rogers v. Richmond*, 365 U.S. 534, 541–42, 81 S.Ct. 735, 739–40, 5 L.Ed.2d 760 (1961), and even if there is ample independent evidence of guilt. *Payne v. State of Arkansas*, 356 U.S. 560, 568, 78 S.Ct. 844, 850, 2 L.Ed.2d 975 (1958). The test for voluntariness is whether under the "totality of the circumstances" the statements are the product of the accused's "free and rational" choice. *Greenwald v. Wisconsin*, 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77 (1968).

Prior to the Supreme Court decision in *Jackson v. Denno* most courts followed one of three approaches in determining the voluntariness of confessions. Under the New York rule the trial judge makes a preliminary determination of the voluntariness of the confession and excludes it only if under no circumstances could it be considered voluntary. It is up to the jury to resolve the voluntariness issue. *Id.* 378 U.S. at 377, 84 S.Ct. at 1781. The Massachusetts procedure requires the judge to present the voluntariness issue to the jury only after he fully and independently determines the confession was voluntarily given. *Id.* at 378, 85 S.Ct. at 1781. Thus the Massachusetts procedure gives the confessor two chances to have the confession determined involuntary. Under the third approach, known as the "orthodox rule" or "Wigmore rule", the trial judge alone finally determines voluntariness. The jury only weighs the credibility, not the admissibility, of the confession. *Id.*

*Jackson v. Denno* condemned the New York procedure as constitutionally infirm because it is usually impossible to determine the jury's decision on the issue of voluntariness; because the procedure inevitably puts improper considerations of truthfulness of the confession into the voluntariness determination; and because a jury is unlikely to entirely disregard an involuntary confession. *Id.* at 386–389, 84 S.Ct. 1786–87. Furthermore the New York procedure may discourage the accused, often the only source of information on the issue, from taking the stand in the jury's presence because of his vulnerability to impeachment by proof of prior convictions and broad cross-examination. *Id.* at 389, n. 16, 84 S.Ct. at 1787, n. 16. For these reasons the New York procedure "poses substantial threats to a defendant's constitutional rights to have an involuntary confession entirely disregarded and to have the coercion issue fairly and reliably determined." *Id.* at 389, 84 S.Ct. at 1787. *Jackson v. Denno*, meets this threat by requiring that an independent and reliable determination of the voluntariness of the confession be made before the confession is allowed to go to the guilt determining jury. *Id.* at 395–96, 84 S.Ct. at 1791.

Subsequent decisions have answered some questions left open by *Jackson v. Denno*. The prosecution must prove at least by a preponderance of the evidence that the confession was voluntary. *Lego v. Twomey, supra*, 404 U.S. at 489, 92 S.Ct. at 627. The presence of the jury during the voluntariness hearing, as in the instant case, does not in and of itself violate due process, particularly when the confession is proven voluntary, because the confessor is not prejudiced by the jury's presence in that circumstance. *Pinto v. Pierce*, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967). Accordingly the *Jackson v. Denno* court held that the constitutional error might be cured by a post trial hearing on the issue of voluntariness. If the confession is found voluntary the conviction stands. If the confession is found to be involuntary the accused is entitled to a new trial within a reasonable time. *Jackson v. Denno, supra*, 378 U.S. at 394, 84 S.Ct. at 1790. Finally, *Jackson v. Denno* is retroactive. *Johnson v. New Jersey*, 384 U.S. 719, 729, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966). Therefore the instant case is governed by *Jackson v. Denno* even though it was decided before that decision.

*Sims v. State of Georgia* provides succinct guidance for a court which is reviewing a trial record to determine if *Jackson v. Denno* is satisfied: "[I]t is not for the jury to make the primary determination of voluntariness. Although the judge need not make formal findings of fact or write an

opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967).

### Application of the Law to the Facts

■ The district court ruled that the "unmistakable clarity" standard was not met because the trial judge merely overruled the objection to admission. The Fifth Circuit case of *Smith v. State of Texas*, 395 F.2d 958 (5th Cir. 1958), was cited for the proposition that a mere overruling of the objection to admission does not satisfy the reliable determination requirement of *Jackson v. Denno*. Of course, in jurisdictions which clearly follow either the Massachusetts or the orthodox procedure a mere overruling of the objection ordinarily will satisfy due process requirements because the trial judge must make a reliable determination of voluntariness as a condition precedent to overruling the objection. *Jackson v. Denno, supra*, 378 U.S. at 378–79, 84 S.Ct. at 1782. However Texas was not one of those jurisdictions during the pre-*Jackson v. Denno* era. Indeed it is not even clear which approach Texas followed. Some jurists argue that the pre-*Jackson v. Denno* trial judge could, at his discretion, either decide the voluntariness issue or let it go to the jury. *E. g., Hackathorn v. Decker*, 369 F.2d 150 (5th Cir. 1966), *modified on other grounds*, 438 F.2d 1363 (5th Cir. 1971); *Smith v. State of Texas*, 236 F.Supp. 857, 861 (S.D.Tex.1965). Others argue that Texas followed the condemned New York procedure. *E. g., Burns v. Beto*, 371 F.2d 598, 603 (5th Cir. 1966); *Fernandez v. Beto*, 281 F.Supp. 207 (N.D.Tex.1968) (praised by Wigmore's treatise as a "superb analysis" of the pre and post *Jackson v. Denno* Texas practice, III J. Wigmore, Wigmore on Evidence 586–87, n. 20 (Chadbourn rev. 1970)). We need not decide which view is correct. Since neither the Massachusetts nor the orthodox rule was clearly followed in Texas at the time of petitioner's robbery trial, mere overruling of the objection does not satisfy *Jackson v. Denno. See Smith v. State of Texas, supra.*

However there was more than a mere overruling of the objection in this case. Appellee argues that the previously quoted statements of the trial court pull the confession into compliance with *Jackson v. Denno*. The district court did not agree and neither do we. The court could well have meant that the prosecution had not yet proven that the confession could not be deemed voluntary under any circumstances (the condemned New York procedure). *See Jackson v. Denno, supra,* 378 U.S. at 377, 84 S.Ct. at 1781.

■ Second, and more troublesome, the trial judge, approximately nine years after the trial of the robbery case, filed the certification reproduced at Note 2 of voluntariness of the confession. The district court opines that the certification should not be accorded much weight, even though this court has placed some reliance on a similar certification in *State of Texas v. Graves, supra.* We agree that the certification in this case does not satisfy *Jackson v. Denno*, but for different reasons.

First, the certification was prepared nine years after the robbery trial. Given the case load in most state trial courts, it taxes the imagination to think a trial judge could recall the circumstances of a particular suppression hearing nine years later. However, our imagination is aided somewhat by the fact that Judge Thurman has been the trial judge often throughout petitioner's criminal trial experience. Petitioner's successive visits to Judge Thurman's court could well have served to keep the facts of the 1962 robbery confession fresh in the jurist's mind. Were mere passage of time the only infirmity, we would be reluctant to conclude that the certification is not entitled to "much weight".

Furthermore, contrary to the implications in the district court opinion, *Smith v. State of Texas* does not vitiate any approval which *Graves* may have given the Texas procedure of filing an after the fact certification of voluntariness by the state trial judge.

The defendant in *Smith* was convicted of a brutal sex slaying of a twelve year old

boy and was sentenced to death. He claimed the confession was beaten out of him. The evidence on the voluntariness issue was heard in the presence of the jury. The only action taken by the Texas trial judge was to overrule the objection to admission. The issue was then submitted to the jury. The defendant sought federal habeas corpus alleging a due process violation of *Jackson v. Denno*. The state trial judge testified at the habeas hearing: that his practice had been to make no overt announcement of voluntariness but that he always made the determination in his own mind before allowing the confession to go to the jury; that it was a matter of conscience with him not to admit a confession which he decided was involuntary; and that he "would say" that he had decided the confession was voluntary, otherwise he would not have admitted it in evidence. *Smith v. State of Texas, supra*, 395 F.2d at 961. This Court held that the Texas judge's testimony at the habeas hearing fell short of the *Jackson v. Denno* standard of a reliable and clear cut determination of the issue of voluntariness.

The *Smith* court decided the trial judge's testimony was equivocal. The reported portions of the testimony referred to his usual "practice" and that he "would say" he determined voluntariness otherwise he would not have admitted the confession. The court was not convinced that the record proved with "unmistakable clarity" that the reliable determination of voluntariness was made. *See Sims v. State of Georgia, supra*. The testimony could be interpreted to mean that the judge usually decided voluntariness in his own mind before admitting a confession; therefore he *must* have decided the issue on that occasion. Since the best that can be said of pre-*Jackson v. Denno* Texas law is that the judge had discretion either to decide the voluntariness issue himself (under the Massachusetts procedure) or to allow the jury to decide the issue (the condemned New York procedure), the *Smith* court was justified in concluding *Jackson v. Denno* was not satisfied. It is evident that *Smith* condemns the particular trial judge testimony found therein and not, as suggested by the district court opinion, all trial judge testimony or certifications concerning voluntariness of confessions. This follows because *Smith* explicitly held that the record which a court may consider in testing compliance with *Jackson v. Denno* can include extrinsic evidence as well as the trial transcript. *Smith, supra*, 395 F.2d at 961, n. 2.

There are portions of the *Smith* opinion which could be read to require an actual written or oral ruling on the issue of voluntariness before the confession goes to the jury. It is obvious that such an overt finding is preferred. However, we do not interpret *Smith* to preclude a non-verbalized determination of voluntariness by the trial judge or proof of that determination by testimony at the habeas hearing or by a certification as in *Graves, supra*, 380 F.2d at 681.

In *Graves* the defendant was convicted of murder and sentenced to death. He claimed that he was coerced to confess as he lay severely wounded in a hospital bed. The trial judge's only action was overruling the objection to admission of the confession. *Graves* petitioned the district court for a writ of habeas corpus which was granted. A panel of this court reversed. The record consisted of the trial transcript, a certification of voluntariness of the confession submitted by the Texas trial judge, and the transcript of the oral testimony of the trial judge at the habeas hearing. *Id.* at 681. *Graves* recognized the validity of all three forms of evidence and held that the due process requirements of *Jackson v. Denno* and *Sims v. State of Georgia* were satisfied. The subsequent decision in *Smith v. State of Texas* did not cite *Graves* and it certainly did not modify the legal principles set forth in *Graves.*

Although due process requirements may be satisfied by the procedures sanctioned in *Graves*, there will be occasions, as in *Smith*, when the stringent *Sims v. State of Georgia* requirement of proof of voluntariness from the record with "unmistakable clarity" is not satisfied. The instant case is one of these occasions. The record of the 1962

robbery trial reveals that petitioner's confession was admitted in evidence *before* he took the stand to give his version of the events leading up to the signing of the confession. At the time the confession was read into evidence the only evidence of involuntariness was the policeman's testimony that he told Martinez that signing the statement was the "proper thing to do." Record, vol. 2 at 477. Certainly at that stage of the trial there was no reason to believe the confession was involuntary. However, petitioner's version of the events surrounding the confession could raise serious doubts as to voluntariness. We are unable to determine from the certification and the remainder of the record before us whether the trial court reevaluated voluntariness after hearing petitioner's testimony. If he did not, then the voluntariness decision was based on less than all the relevant evidence, one of the evils *Jackson v. Denno* specifically seeks to avoid. *Id.* 378 U.S. at 389, n. 16, 84 S.Ct. at 1787, n. 16. For this reason the record before us does not establish with "unmistakable clarity" that the trial judge reliably determined the voluntariness of the confession. *Jackson v. Denno* has not been satisfied.

*Petitioner Has Alleged Facts Which, If True, Establish Involuntariness*

■ Even though the procedural requirements of *Jackson v. Denno* are not satisfied, petitioner must still "show that his version of the events, if true, would require the conclusion that his confession was involuntary" before he is entitled to a new hearing on voluntariness. *Procunier v. Atchley, supra,* 400 U.S. at 451, 91 S.Ct. at 488. The district court held that petitioner's version did not meet this requirement. We disagree. Certainly petitioner's vague testimony, that the interrogators started talking to him about his family and that they told him the judge might go easier on

him if he signed, does not establish involuntariness. See *United States v. Nuckols,* 606 F.2d 566, 569 (5th Cir. 1979). However, petitioner also asserts that he, an illiterate Mexican-American, was tricked into signing a statement that, unbeknownst to him, contained material inaccuracies. Although this type of trickery is not one of the traditional tools of coercion, we conclude that such trickery, if it occurred, is a due process violation which offends the principles of *Jackson v. Denno.*[4]

■ Petitioner is entitled to a new hearing on the issue of the voluntariness of the 1962 confession. If no hearing is held within a reasonable time the life sentence which rests upon the prior robbery conviction must be reduced in accordance with Texas law. The judgment of the district court denying habeas corpus relief is reversed and the cause remanded for further proceedings.

REVERSED and REMANDED.

---

4. The *Graves* decision states that a criminal defendant who alleges a confession is "not completely accurate, while admitting in the main it is correct" does not state a claim of involuntariness. *Graves, supra,* 380 F.2d at 681. This statement does not conflict with the present decision. The inaccuracy in *Graves*

was that the victim hit his killer on the head, not on the hand, *id.* at 681, while the inaccuracy asserted by petitioner is that the investigator inserted the missing element of scienter in the statement, thereby completing the elements of the crime. The fact situations are critically dissimilar.